**In re Karl Eugene CHASE, Barbara Ann Chase, Debtors.**

**Bankruptcy No. 82–1–1487.**

United States Bankruptcy Court,
D. Maryland,
at Rockville.

March 24, 1983.

Lee Cowan, Washington, D.C. and Stanley Karlin, Silver Spring, Md., for debtors.

Shelly Mintz, Hyattsville, Md., for minor creditor, Selene Harold.

Thomas Lackey, Upper Marlboro, Md., Trustee.

## MEMORANDUM OF OPINION

PAUL MANNES, Bankruptcy Judge.

This matter was before the court for the confirmation of the Chapter 13 Plan filed by Karl E. Chase and Barbara A. Chase, debtors. An objection was made to confirmation by Selene Harold, a minor, by her mother and next friend, Sheila Irene Harold.

Debtors' plan proposes the payment of $150.00 to the trustee for a period of 36 months. Debtors list six consumer debts aggregating $923.40, and a judgment of $25,000.00 owing to the objecting creditor. Their plan suggests a payment pro rata, and after the deduction of the trustee's fees and expenses, there would be paid $135.00 a month for a total of $4,860.00 over the 36 months of the plan.

The creditor's claim arises out of a consent judgment entered in the Circuit Court for Prince George's County, Maryland. The judgment was based upon a sexual assault by the male debtor, Karl Eugene Chase, upon the minor. The creditor further charges that "Mrs. Chase was fully aware of her husband's sexual propensities and fondness for young girls, yet nevertheless, took into her home and into her charge the minor creditor, SELENE HAROLD, who was subsequently and predictably assaulted by the debtor, Karl Chase." The creditor argues that the consent judgment was entered into with the expectation of a plea being made to the sentencing court in the hopes of allowing Mr. Chase to remain out of prison earning a living and supporting his family and repaying the victim. In fact, Mr. Chase was placed upon probation.

The creditor urges that because under 11 U.S.C. § 523(a)(6) an individual debtor may not be discharged "for willful and malicious injury by the debtor to another entity or to the property of another entity," that this provision bars confirmation under Chapter 13 of a plan that would purport to discharge such a debt. This is not the law. Debts that fall within the scope of § 523(a)(6) may still be discharged pursuant to § 1328(a) after the completion of a Chapter 13 Plan. *In re DeSimone,* 25 B.R. 728 (D.C.E.D.Pa.1982). It may be noted that the Chapter 13 discharge is far broader than the Chapter 7 discharge. It covers every item other than those provided for under the plan, and it does not extend to payments for spousal support and child support under § 523(a)(5). In short, the

quality of the Chapter 13 discharge is of a far more substantial nature than that of a Chapter 7 discharge, in that this discharge is obtainable so long as the Chapter 13 Plan complies with three requirements of § 1322 (a) and the requirements of § 1325(a).[1]

Because § 1325(a)(4) requires only that there be a payout for each allowed unsecured claim not less than the amount that would be paid in liquidation, there have been zero payment plans and minimal payment plans, that is, where there have been payments of either $1.00 a month or nothing to the unsecured creditors. *See generally, Matter of Scher*, 12 B.R. 258 (Bkrtcy.S. D.N.Y.1981). Perhaps the most graphic example of the generosity of a Chapter 13 discharge is set forth in the case of *In re Rimgale*, 669 F.2d 426 (7th Cir.1982).[2] In reversing the order of the District Court denying confirmation, the Seventh Circuit pointed out that the existence of a claim that would have barred discharge that is not paid in full, is not an impediment to confirmation. The bankruptcy court must look to the good faith of the petitioner. 669 F.2d at 431–432.

It is this phrase, "good faith," contained in § 1325(a)(3) that has caused the disputes among the courts. Courts that have been unwilling to confirm Chapter 13 plans have used the peg of good faith upon which to hang their disapproval. "The 'good faith' requirement is neither defined in the Bankruptcy Code nor discussed in the legislative history. The phrase should, therefore, be interpreted in the light of the structure and the general purpose of Chapter 13." *Memphis Bank and Trust Co. v. Whitman*, 692 F.2d 427, 431, 432 (6th Cir.1982) (When the debtor's conduct is dishonest, the plan simply should not be confirmed). On the other hand, the District of Columbia Circuit held in *Barnes v. Whelan*, 689 F.2d 193 (D.C.Cir. 1982), the bankruptcy court should limit itself "to the traditional meaning of 'good faith' as honesty of intention." 689 F.2d 200. The District of Columbia Circuit in *Barnes* affirmed two nominal payment plans where there was no evidence that the debtors "engaged in any specific conduct,

---

1. Much of this was summarized by Judge Leval in *Matter of Yavarkovsky*, 23 B.R. 756, 757 (D.C.S.D.N.Y.1982):

    In 1978, Congress amended Chapter 13 to make it more accessible and advantageous to individuals seeking the protection of the bankruptcy laws. 1978 Bankruptcy Reform Act, Pub.L. No. 95–598, 92 Stat. 2549 (1978). Eligibility requirements were broadened to include people other than wage earners and debt ceilings were generally increased. Other changes were made to increase the debtor's flexibility in dealing with his creditors. The requirement of creditor approval was eliminated. Also, debtors were permitted to use income to consummate the plan, thus spreading payments in the future. Certain classes of debts not dischargeable under Chapter 7, such as claims based on fraud, were made dischargeable under Chapter 13. That the new Chapter 13 was conceived for the benefit of debtors is further demonstrated by the fact that, unlike Chapters 7 and 11, a debtor may not be involuntarily placed under its provisions. *See generally In re Scher*, 12 B.R. 258, 7 B.C.D. (CRR) 979, 984–89 (Bkrtcy.S. D.N.Y.1981).

    In order to qualify for its generous benefits, however, debtors must comply with certain statutory conditions. For example, the value of property to be distributed to each unsecured creditor under a Chapter 13 plan must be not less than he would receive under a Chapter 7 liquidation. 11 U.S.C. § 1325(a)(4). A plan, furthermore, may not be confirmed unless it "has been proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1325(a)(3).

2. "On May 24, 1979, the Circuit Court of Cook County, Chancery Division, entered a tort judgment against Rimgale and his wife, Alice. Alice Rimgale had been employed as a physchiatric nurse at St. Joseph's Hospital in Joliet, Illinois, and had cared for Mary Ravenot, a twenty-six-year-old widow then undergoing psychiatric treatment and since adjudged incompetent. The Rimgales first won Mrs. Ravenot's confidence, then induced her to turn over to them all the proceeds of her husband's life insurance. The judgment against the Rimgales had the following components: (1) compensatory damages of $29,743 and $3,988.39 in prejudgment interest, for which the Rimgales were jointly and severally liable; (2) punitive damages of $5,000 against Donald Rimgale alone; and (3) attorney's fees and costs amounting to $8,857.75, again assessed against Donald Rimgale alone, based on his false pleading and bad faith in the tort litigation." 669 F.2d at 429.

did not intend to carry out the plan, proposed the plan for an improper purpose, or did anything else to bring either case within the ambit of bad faith as traditionally interpreted." *Ibid.* Shortly after the decision was rendered in the *Barnes* case, the Fourth Circuit decided the case of *Deans v. O'Donnell,* 692 F.2d 968 (4th Cir.1982). In *Deans,* the District Court had affirmed a bankruptcy court's refusal to confirm a Chapter 13 plan, finding that it was not proposed in good faith in that there was no provision for any substantial and meaningful payment to the unsecured creditors. In reversing the District Court, the Fourth Circuit reflected that its task was to construe the statute, not to construct it. Thereafter, the Fourth Circuit laid down the following guidelines:

> Our rejection of an implied *per se* substantial repayment requirement in § 1325(a)(3) should not suggest any endorsement of minimal or no repayment plans. Congress never intended, of course, that Chapter 13 serve as a haven for debtors who wish to receive a discharge of unsecured debts without making an honest effort to pay those debts. While no precise definition can be sculpted to fit the term "good faith" for every Chapter 13 case, we thing the generally accepted definition of "good faith" as used in Chapter 11 of the old Bankruptcy Act, 11 U.S.C. § 766(4) (1976) (repealed), provides the general parameters:
>
>> A comprehensive definition of good faith is not practical. Broadly speaking, the basic inquiry should be whether or not under the circumstances of the case there has been an abuse of the provisions, purpose, or spirit of [the Chapter] in the proposal or plan ....
>
> 9 Collier on Bankruptcy 9.20 at 319 (14th ed. 1978), *cited in In re Goeb,* 675 F.2d 1386, 1390 n. 9 [(9th Cir.1982)]; *In re Rimgale,* 669 F.2d 426, 431 (7th Cir.1981); *In re Terry,* 630 F.2d 634, 635 n. 3 (8th Cir.1980).

As noted, repayment to unsecured creditors, although not a requirement for confirmation of every Chapter 13 plan, was one intended purpose of Chapter 13's enactment. Failure to provide substantial repayment is certainly evidence that a debtor is attempting to manipulate the statute rather than attempting honestly to repay his debts. But substantiality of proposed repayment is but one factor to be considered in deciding if a plan has been proposed in good faith; a court must make its determination based on all militating factors.

Without attempting either to be exhaustive or to establish a criteria "checklist," these factors might include, depending on the particular case, not only the percentage of proposed repayment, but also the debtor's financial situation, the period of time payment will be made, the debtor's employment history and prospects, the nature and amount of unsecured claims, the debtor's past bankruptcy filings, the debtor's honesty in representing facts, and any unusual or exceptional problems facing the particular debtor. Although the court's discretion in making the good faith determination is necessarily a broad one, the totality of circumstance must be examined on a case by case basis in order fairly to apply the statute as now written.

As more Chapter 13 cases reach the circuit level, the research became more and more refined. When the Eighth Circuit had *In re Estus,* 695 F.2d 311 (8th Cir.1982), before it, it had the benefit of *In re Rimgale,* 669 F.2d 426 (7th Cir.1982), *In re Terry,* 630 F.2d 634 (8th Cir.1980), *In re Goeb,* 675 F.2d 1386 (9th Cir.1982), *Barnes v. Whelan, supra,* and *In re Deans, supra,* plus several opinions from District Courts and bankruptcy courts, all dealing with the square peg of the good faith requirement and the round holes of zero payment plans, non-dischargeable debts, including educational loans, and the apparent incongruity of the quality of the Chapter 7 and Chapter 13 relief. Building upon the earlier opinions, particularly the analysis adopted by the Fourth Circuit, the *Estus* court felt that the proper inquiry should be "whether the plan constitutes an abuse of the provisions, purpose, or spirit of Chapter 13. The bankruptcy court must utilize its fact-finding

expertise and judge each case on its own facts after considering all of the circumstances of the case." 695 F.2d at 316. The court went on to say:

> We make no attempt to enumerate all relevant considerations since the factors and the weight they are to be given will vary with the facts and circumstances of the case. However, in addition to the percentage of repayment to unsecured creditors, some of the factors that a court may find meaningful in making its determination of good faith are:
>
> (1) the amount of the proposed payments and the amount of the debtor's surplus;
>
> (2) the debtor's employment history, ability to earn and likelihood of future increases in income;
>
> (3) the probable or expected duration of the plan;
>
> (4) the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court;
>
> (5) the extent of preferential treatment between classes of creditors;
>
> (6) the extent to which secured claims are modified;
>
> (7) the type of debt sought to be discharged and whether any such debt is non-dischargeable in Chapter 7;
>
> (8) the existence of special circumstances such as inordinate medical expenses;
>
> (9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act;
>
> (10) the motivation and sincerity of the debtor in seeking Chapter 13 relief; and
>
> (11) the burden which the plan's administration would place upon the trustee.

See In re Deans, 692 F.2d at 972; In re Kull, 12 B.R. [654] at 659 [ (D.C.S.D.Ga. 1981) ]; In re Heard, 6 B.R. [876] at 882 [Bkrtcy.W.D.Ky.1980]; In re Iacovoni, 2 B.R. [256] at 267 [Bkrtcy.D.Utah 1980].

Of the 11 Estus factors, it would appear that items 1, 3, and 7 require special inquiry in the instant case. Debtors' Chapter 13 schedules disclose an excess of $175.40 a month of income over expenses. It appears that the debtors could commit a larger payment to the plan. In addition, the debtors' plan has an expected duration of three years. A five-year plan would provide a significant increase.

■ Estus factor 7 is "the type of debt sought to be discharged and whether any such debt is non-dischargeable in Chapter 7 . . . ." The debtor, Barbara Ann Chase, even taking the most blown up description of her situation, is charged with being "fully aware of her husband's sexual propensities and fondness for young girls, yet nevertheless, took into her home and into her charge the minor creditor, SELENE HAROLD, who was subsequently and predictably assaulted by the debtor, Karl Chase." "This action was in willful disregard of what Mrs. Chase understood to be her duty in caring for SELENE HAROLD and was in total disregard of the wellbeing of SELENE HAROLD." The exceptions to discharge are contained in 11 U.S.C. § 523. The closest exception to the alleged conduct of Mrs. Chase is § 523(a)(6) excluding from discharge a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." It is settled that a claim or judgment based upon negligence does not constitute willful and malicious injury, even if the negligence is alleged to be reckless and wanton. Collier on Bankruptcy, § 523.16[1], 523–122, 123 (15th ed. 1982). On the other hand, the debt of Mr. Chase appears based upon an assault claim, and such claims are generally considered within the exception to discharge. Ibid.

■ What is the significance of the fact that the debtor files a Chapter 13 plan in order to obtain a discharge from what would otherwise be a non-dischargeable debt? This is one of the factors discussed in both Deans and Estus. From a reading of In re Rimgale, 669 F.2d 426 (7th Cir.1982), it is clear that the Code specifically allows the discharge of debts under Chapter 13

that are not dischargeable under Chapter 7. *See also, In re Slade,* 15 B.R. 910 (Bkrtcy. App. 9th Cir.1981) (Plan confirmed for five percent repayment of embezzlement debt); *In re Vratanina,* 22 B.R. 453, 9 B.C.D. 614 (Bkrtcy.N.D.Ill.1982) (Plan confirmed for ten percent repayment of judgment based on fraud and conversion); *In re Syrus,* 12 B.R. 605 (Bkrtcy.Kan.1981) (Plan confirmed for seventy percent repayment of student loan non-dischargeable in Chapter 7 proceeding); *In re Seely,* 6 B.R. 309 (Bkrtcy.E. D.Va.1980) (Plan confirmed for debtor convicted in state court of assault and battery, a willful and malicious tort; second plan confirmed for debtor seeking to avoid his dischargeability problems); *In re Keckler,* 3 B.R. 155, 6 B.C.D. 14 (Bkrtcy.N.D.Ohio 1980) (Plan confirmed for five percent repayment by debtor convicted of forging and uttering checks stolen from her employer); *In re Carter* 9 B.R. 140 (Bkrtcy.N.D.Ga. 1981) (Plan confirmed with zero payments for unsecured creditors holding alleged nondischargeable claims); *Matter of Prine,* 10 B.R. 87 (Bkrtcy.Idaho 1981) (Plan confirmed for five percent repayment of embezzled funds where debtor's probation order requires restitution); *In re Tramonto,* 23 B.R. 464 (Bkrtcy.W.D.N.Y.1982) (Plans confirmed for twenty-nine percent repayment of debt incurred as a result of larceny, conversion and fraud, and for twenty percent repayment of debt based upon judgment rendered in action for intentional tort). A reading of the Code compels the conclusion that it was the intention of Congress to permit a discharge by way of Chapter 13 of debts that would not otherwise be dischargeable under Chapter 7. While this view is by no means universal, *See Matter of Esser,* 22 B.R. 814, 818 fn. 7 (Bkrtcy.E.D. Mich.1982), it is difficult to read the discharge provision of 11 U.S.C. § 1328(c) any differently. That section provides:

> (c) A discharge granted under subsection (b) of this section discharges the debtor from all unsecured debts provided for by the plan or disallowed under section 502 of this title, except any debt—

(1) provided for under section 1322(b)(5) of this title; or

(2) of a kind specified in section 523(a) of this title.

For this reason, the court finds that it would not be bad faith for the debtor, Karl Eugene Chase, to avail himself of Chapter 13 in order to shed the burden of a non-dischargeable debt under Chapter 7. The debtor is taking advantage of an opportunity granted him by the Congress. Such action does not appear to constitute a lack of good faith under any definition.

Perhaps many members of Congress thought that there would be a worthwhile purpose in permitting the discharge of debts [3] under Chapter 13 not otherwise dischargeable under Chapter 7 where there would be a meaningful repayment program. Unfortunately, the fact is that the statute permits the discharge of such debts, in the view of some courts, with either a zero or minimum payment plan. If this result is offensive to the beholder, there is a very simple answer. The legislation may be amended to eliminate the free lunch.

With regard to the instant case, the court finds a lack of good faith on the part of the debtor, Karl Eugene Chase, in failing to propose a plan for a duration of the maximum period permissible, five years. This would appear appropriate in that the debt would be otherwise non-dischargeable, and the amount of the payment under the plan is not a substantial percentage of the debt. An order will be entered denying confirmation with leave to amend the Chapter 13 plan.

---

**3.** This list of debtors would include embezzlers, murderers, rapists, forgers, thieves, arsonists, and assorted other miscreants.