In re William B. WINTHURST, Rebecca S. Winthurst, Debtors.

Bankruptcy No. 88–82219.

United States Bankruptcy Court, C.D. Illinois.

March 14, 1989.

Neil F. Hartigan, Atty. Gen. of Illinois Revenue Litigation Div., Chicago, Ill., for the Commission.

Tom M. Lytton, East Moline, Ill., for debtors.

U.S. Trustee, Peoria, Ill.

## OPINION AND ORDER

WILLIAM V. ALTENBERGER, Bankruptcy Judge.

Debtors filed a Chapter 13 proceeding, and scheduled a student loan owed to the Illinois State Scholarship Commission (COMMISSION) as an unsecured debt. The COMMISSION objected to confirmation of the plan which proposes to pay unsecured creditors 1% over three years. The basis of the COMMISSION's objection is twofold. First, the plan was not filed in good faith, in that the student loan is not dischargeable under Chapter 7 of the Bankruptcy Code yet the practical effect of the Debtors' plan is to obtain a discharge through a minimum payment of 1% over three years. Second, that the Debtors must establish an undue hardship that justifies discharging the student loan.

■ The courts have recognized that a discharge under Chapter 13 is broader than a discharge under Chapter 7, and that the Bankruptcy Code allows the discharge under Chapter 13 of a debt that is not dischargeable under Chapter 7. *In re Chase,* 28 B.R. 814 (Bkrtcy.D.Md.1983). Under this concept a student loan which is not discharged under a Chapter 7 proceeding can be discharged in a Chapter 13 proceeding, *In re Estus,* 695 F.2d 311 (8th Cir. 1982), even if the sole purpose of the Chapter 13 proceeding is to discharge a student loan which could not be discharged under Chapter 7. *In re Lawson,* 93 B.R. 979 (Bkrtcy.N.D.Ill.1988).

■ The COMMISSION acknowledges that each case must be decided on a case by case basis, with the court considering the "totality of the circumstances". *See Matter of Smith,* 848 F.2d 813 (7th Cir. 1988). The COMMISSION also acknowledges that there are a variety of factors that a court can consider in determining good faith. In *In re Frank,* 69 B.R. 129 (Bkrtcy.C.D.Ill.1986), this Court had occasion to list some thirty-two factors utilized

by the Courts to that date. The COMMISSION's objections are based solely on three of the various factors that courts have considered: (1) the debt is not dischargeable in Chapter 7, (2) the length of the plan's payment period, and (3) the amount of the payment to unsecured creditors. It ignores the other factors. Although given the opportunity to present evidence on other factors, the COMMISSION failed to do so.

In those cases involving student loans where the courts have found bad faith, factor(s) other than the Chapter 13 proceeding sought to discharge a student loan were present. *In re Lawson, supra.* Such additional factors are not present in this case. The Debtors have no history of filing bankruptcy, and they have been honest in representing the facts of their financial condition and their Chapter 13 plan, which was not the case in *In re Doersam,* 60 B.R. 130 (Bkrtcy.S.D.Ohio 1986), aff'd, 849 F.2d 237 (6th Cir.1988), where the debtor misrepresented her dependents. The Debtors' actions do not constitute a "manipulation" of the Bankruptcy Code. The Debtors are merely taking advantage of an alternative available to them. The Debtors' plan was not proposed in an inequitable fashion. Two secured creditors and one other creditor, secured by a co-signer, are being repaid in full. All other debts are unsecured and are being treated equally through a 1% payment. Naturally, the 1% payment cannot be considered to be a substantial payment, but the core of the issue is whether a 1% payment can be a good faith payment.

Nor does the Debtors' financial condition or employment history suggest that their plan has been filed in bad faith. They have total property valued at $937.00, part of which consists of $6.00 in a bank account and a 1972 Chevrolet valued at $100.00. He is employed as a mechanic and his wife is a cashier in a fast food restaurant. Their total income is $795.00 per month, with expenses of $740.00 a month. This financial picture does not show a big surplus available to creditors, such as is found in *Matter of Keiser,* 35 B.R. 496 (Bkrtcy.D. Del.1983), or the retention of high-priced assets as in *In re Nkanang,* 44 B.R. 955

(Bkrtcy.N.D.Ga.1984). Their prospects for future employment do not indicate that they might earn more in the future and therefore be able to pay more on their debt. There is no evidence to indicate they can substantially improve their earning capabilities. It would appear that their position in life has been established. They are not comparable to an individual with an advanced education such as the debtor in *In re Nkanang, supra,* who held two masters degrees and had completed work toward a Ph.D. *See also In re Williams,* 42 B.R. 474 (Bkrtcy.E.D.Ark.1984) where the debtor graduated from the University of Arkansas.

The Debtors' plan proposes to run for thirty-six months, which is the maximum it could run, unless the Court, for cause, approves a longer period. It is not the type of situation as found in *In re Estus* where the plan was only for fifteen months instead of the more common period of thirty-six months. Some courts have refused to confirm a Chapter 13 plan where a student loan is involved unless the debtor's plan runs for sixty months. *See In re Nkanang, supra; In re Williams, supra. See also In re Chase, supra,* (nondischargeable assault claim); *In re Todd,* 65 B.R. 249 (Bkrtcy.N.D.Ill.1986), (willful and malicious injury).

Such a result is contrary to the rationale underlying Section 1322(c) of the Code as expressed in the House Judiciary Committee Report:

> On the other hand in certain areas of the country, inadequate supervision of debtors attempting to perform under wage earner plans have (sic) made them a way of life for certain debtors. Extensions on plans, new cases, and newly incurred debts put some debtors under court supervised repayment plans for seven to ten years. This has become the closest thing there is to involuntary ser-

vitude. H.R.Rep. No. 595, 95th Cong., 1st Sess. 117 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6078.

*See also* footnote ¶ 1, 5 *Collier on Bankruptcy,* para. 1322.15 (15th ed. 1988)[1]. Section 1322(c) was inserted into the Bankruptcy Code to protect a debtor, not to coerce him into making payments over a sixty-month period to increase the amount payable to a particular creditor. As stated in 5 *Collier on Bankruptcy,* para. 1322.15 (15th ed. 1988):

> The usual reason for extension of plan payments beyond three years is the debtor's inability to cure a default under section 1322(b)(5) or to pay priority or allowed secured claims in a shorter time. Extensions up to the five year maximum should be allowed without difficulty in such circumstances, since without them the debtor may be unable to obtain effective relief under chapter 13. (Footnotes omitted.)

To obtain effective relief the Bankruptcy Code does not require the Debtors to extend the life of the plan to sixty months in order that unsecured creditors, which includes the COMMISSION, will receive more.

Some courts treat student loans as long term debt under Section 1322(b)(5) and deny a discharge under Section 1328(c)(1). *See In re Geehan,* 59 B.R. 600 (Bkrtcy.S.D. Ohio 1986). This Court does not agree. Section 1322(b)(5) provides as follows:

> (b) Subject to subsections (a) and (c) of this section, the plan may—
>
> . . . .
>
> (5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on

1. The footnote reads: "Chapter XIII was originally enacted in 1938, principally in response to the appeals of two men, one of whom, Referee Charles True Adams of Chicago, testified in 1937: 'I think we have something that was not in the others ... We do not want to make wage slaves out of these men, we do not want them bound for life when they are under this plan.' Hearings on H.R. 8046 Before the Subcomm. on the Judiciary of the House of Representatives, 75th Cong., 1st Sess. 53 (1937). It took more than forty years for those words to work the desired results."

which the final payment under the plan is due;

Section 1328(c)(1) provides as follows:

(c) A discharge granted under subsection (b) of this section discharges the debtor from all unsecured debts provided for by the plan or disallowed under section 502 of this title, except any debt—

(1) provided for under section 1322(b)(5) of this title;

Section 1322(b)(5) is the operative section. Its purpose is not to require a debtor to pay a long term debt, but to permit a debtor with long term debt which requires payments beyond the plan period, to cure defaults and to maintain required payments during the Chapter 13 plan period. A common example is a mortgage debt on the debtor's residence. It is another provision inserted into the Bankruptcy Code with the intent of benefiting debtors. However, a debtor may elect not to take advantage of Section 1322(b)(5) by deciding not to cure the default and maintain the payments. Should the debtor make such an election, the secured creditor is then free to foreclose its mortgage, and in the event there is a deficiency, the deficiency is treated just as any other unsecured debt under the plan.

Returning to the other factors considered by the courts, there is no preferential treatment of creditors, no evidence which would challenge the Debtors' motivation and sincerity in filing the Chapter 13, and no evidence indicating there was anything unusual about the way the debt arose. Nor is there any evidence of linkage between the incurring of the debt and the filing of the Chapter 13. The Chapter 13 proceeding was not filed in response to collection efforts by the COMMISSION.

■ The basis of the COMMISSION's second objection is court decisions which impose an additional condition to those required by Section 1325. In a line of cases that have been decided by the Bankruptcy Court for the Southern District of Ohio, the Bankruptcy Court has held that in addition to establishing good faith, the debtor must establish an undue hardship that justifies discharging the student loan. In *In re*

*Geehan, supra. See also Matter of Gaston*, 25 B.R. 571 (Bkrtcy.S.D.Ohio 1982).

The standard for confirmation of a Chapter 13 is contained in Section 1325. That section does not contain any provision which indicates that where a student loan is involved, the debtor must establish undue hardship as far as a student loan is concerned. As was previously pointed out, the discharge provisions under Chapter 13 are broader than those under Chapter 7, and a student loan can be discharged under Chapter 13. Therefore, to take the position that these courts have taken imposes a standard not required by Section 1325 and which denies a debtor the protection afforded by the Bankruptcy Code.

IT IS, THEREFORE, ORDERED that the Objection to the Confirmation of the Plan is denied. The Plan should be confirmed and the Debtors are directed to submit an Order of Confirmation within fourteen (14) days.

This Opinion and Order is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.