**In re Gregory A. LeMAIRE, Debtor.**

**Paul HANDEEN, Appellant,**

v.

**Gregory A. LeMAIRE, Appellee.**

No. 88–5275.

United States Court of Appeals,
Eighth Circuit.

July 5, 1989.

Before McMILLIAN, JOHN R. GIBSON, and MAGILL, Circuit Judges.

MAGILL, Circuit Judge.

In this appeal, we consider for the first time the dischargeability under Chapter 13 of the Bankruptcy Reform Act, 11 U.S.C. §§ 1301 et seq., of a civil judgment owed to an assault victim by an assailant. The creditor-victim urges us to adopt a bright line rule prohibiting the discharge of any debt incurred as a result of a debtor's heinous criminal activity. Such a rule would effectively extend the nondischargeability provision of 11 U.S.C. § 523(a)(6) to Chapter 13 proceedings, a result directly contrary to Chapter 13's terms and unsupported by the statute's legislative history. We refuse to engage in such judicial activism.

The creditor asserts that the court's failure to adopt a bright line rule will result in

Chapter 13 becoming a "haven for criminal debtors" to discharge their otherwise non-dischargeable debts arising out of criminal conduct. We disagree. While we recognize the potential for abuse inherent in allowing such a discharge, our refusal to make the debt automatically nondischargeable does not mean that the circumstances underlying a debt are irrelevant. The bankruptcy court and district court must consider the circumstances underlying the debt as one factor in determining a debtor's good faith for purposes of § 1325(a)(3). *Education Assistance Corporation v. Zellner*, 827 F.2d 1222 (8th Cir.1987); *In re Estus*, 695 F.2d 311 (8th Cir.1982). Because we find that the bankruptcy court[1] and district court[2] properly determined that the debtor in this case was acting in good faith, we affirm.

## I.

The debt at the heart of this case arises from a civil judgment entered against Gregory LeMaire after LeMaire intentionally shot and seriously injured Paul Handeen. This court is not privy to all the facts underlying LeMaire's attack on Handeen, but the viciousness of that attack is not in dispute. LeMaire intended to kill Handeen, attempted to do so, and very nearly succeeded. The nature of the attack is made clear by the record before us. In July 1978, LeMaire shot at Handeen nine times with a bolt action rifle, hitting him five times. LeMaire fired several of the shots at point blank range. Handeen almost died.

LeMaire pled guilty to aggravated assault and received a sentence of one to ten years. He served twenty-seven months, and was released in 1981. After his release, LeMaire returned to graduate school at the University of Minnesota. He received his Ph.D. in experimental behavior pharmocology in January 1985. Since then, he has served as a research fellow at the University, and expects to continue to work as a researcher for a scientist at the University after completing a third year as a research fellow.

Handeen obtained a civil judgment for $50,362.50 against LeMaire in September 1985. Shortly thereafter, Handeen attempted to collect on the judgment by commencing garnishment proceedings. On January 16, 1987, LeMaire filed for Chapter 13 protection. In addition to Handeen, LeMaire's debt schedule names two additional creditors: the University of Minnesota[3] and his parents. The schedules show a $900 debt to his parents secured by a 1980 Datsun station wagon and an $11,822 debt to his parents based on a promissory note LeMaire signed the day before he filed in the bankruptcy court.[4]

LeMaire's original plan proposed payments of $175 per month for thirty-six months. Before the confirmation hearing on the original plan, LeMaire modified it to increase the payments to $265 per month for thirty-six months. This modified original plan would have provided creditors with a dividend of approximately 13.75 percent. Handeen objected to the plan. After a hearing, the bankruptcy court denied confirmation. In an order dated May 23, 1987, the court concluded that LeMaire was not applying all of his disposable income to the plan and expressed concern about LeMaire's failure to propose a plan for the

---

1. The Honorable Robert J. Kressel, United States Bankruptcy Judge for the District of Minnesota.

2. The Honorable Diana E. Murphy, United States District Judge for the District of Minnesota.

3. The debt to the University was for an $800 student loan. LeMaire has made a reaffirmation agreement with the University, however, agreeing to pay $500 of the original debt at the end of deferment in accordance with the original agreement.

4. LeMaire's parents filed a secured claim for $3,072 and an unsecured claim for $9,650, reflecting a debt for the following:

| | |
|---|---|
| Legal Fees | $3,600 |
| Partial Payment of Handeen Judgment | 3,000 |
| Living and Educational Expenses 1971–1981 | 3,050 |
| Personal Loan for Computer | 2,172 |
| Loan for Purchase of Car | 900 |

The bankruptcy court disallowed the claims based on living expenses from 1971–1981 and the loan for a car, but upheld the claims based on loans for legal fees, partial payment of debt to Handeen and loan for the computer. After a hearing, the court reduced the debt claimed by LeMaire's parents, finding that the money spent in providing for LeMaire's living and educational expenses was a gift and that the parents retain title to the car which they are allowing LeMaire to use. The court allowed an unsecured claim of $8,772. Order of January 7, 1988.

maximum statutory period of sixty months. See 11 U.S.C. § 1322(c). The court also denied Handeen's motion to dismiss.

On September 29, 1987, LeMaire filed a new plan increasing the monthly payment to $500 and extending the term of the plan to sixty months. Under this plan, creditors would receive a dividend of approximately 42.3 percent. Handeen objected to confirmation on grounds that the plan was not proposed in good faith and that LeMaire did not dedicate all of his disposable income to the plan. The bankruptcy court held a hearing on Handeen's motion, and confirmed LeMaire's amended plan on November 12, 1987.

The bankruptcy court found that LeMaire had a monthly net income of $1,185.24 and reasonable monthly expenses of $760.87.[5] After deducting expenses from income, the court found that LeMaire had approximately $424 per month in disposable income. Although this was less than the $500 LeMaire proposed to pay under the plan, the bankruptcy court confirmed the plan and recognized that LeMaire "will have to make up [the difference] by sacrifices in other areas or by continued financial support from his parents." The court rejected Handeen's objections that the plan was not proposed in good faith and that the plan did not provide for payments in the amount of LeMaire's disposable income.

Handeen filed a motion for amended findings and conclusions of law on November 25, 1987. He filed a motion objecting to the claims of LeMaire's parents on December 4, 1987, arguing that the LeMaires' claims were gifts to their son and should be disallowed as such. Both motions were heard on January 6, 1988. The bankruptcy court denied Handeen's motion for amended findings and conclusions of law in an order dated January 13, 1988. In an order dated January 7, 1988, the court allowed the LeMaires' claims in the amount of $8,772.[6]

Handeen appealed to the district court from the bankruptcy court's orders allowing LeMaire's parents' general unsecured claim and denying Handeen's motion for amended findings of fact and conclusions of law. On appeal, Handeen argued that: (1) the plan was not proposed in good faith; (2) the plan does not include all of LeMaire's projected disposable income for the plan's five-year period; (3) LeMaire's research stipend was not regular income for purposes of 11 U.S.C. § 101(29); and (4) LeMaire's debt to his parents was either a gift, or was barred by the statute of limitations or statute of frauds. The district court rejected these arguments and affirmed the decision of the bankruptcy court. Handeen raises the same arguments on appeal to this court. On review, we examine a bankruptcy court's decision to determine whether its factual findings are clearly erroneous and whether its legal conclusions, which are subject to de novo review, are correct. *Education Assistance Corporation v. Zellner*, 827 F.2d 1222, 1224 (8th Cir.1987); *Wegner v. Grunewaldt*, 821 F.2d 1317, 1320 (8th Cir.1987).

## II.

▮▮▮ Handeen urges that because under 11 U.S.C. § 523(a)(6) an individual debtor may not be discharged "for willful and malicious injury by the debtor to another entity or the property of another entity," a Chapter 13 plan purporting to discharge such a debt should not be confirmed. No one disputes that LeMaire's debt to Handeen arises out of a "willful and malicious injury" for purposes of § 523(a)(6). The issue in this case is whether a debt for willful and malicious injury which is within the scope of § 523(a)(6) (and therefore would be nondischargeable under Chapter 7, see 11 U.S.C. §§ 523(a), 727) is dischargeable under Chapter 13. This is a case of first impression in this circuit.

Although § 523(a)(6) expressly prohibits discharge under certain sections of the

---

**5.** Monthly expenses are as follows:

| | |
|---|---|
| Rent | $240.00 |
| Food | 175.00 |
| Clothing | 20.00 |
| Professional Periodicals | 39.00 |
| Professional Books | 16.66 |
| Health Insurance | 48.75 |
| Auto Insurance | 35.00 |
| Motorcycle Insurance | 6.66 |
| Transportation Expenses | 70.00 |
| Miscellaneous (including dental, drugs, medical, glasses, and recreation) | 30.00 |
| Professional Dues | 4.00 |
| Professional Conferences | 75.00 |
| TOTAL: | $760.00 |

**6.** See supra note 4.

Bankruptcy Code,[7] it does not by its terms apply to discharge under § 1328(a). Le-Maire has filed an application for discharge pursuant to § 1328(a), which provides:

As soon as practicable after completion by the debtor of all payments under the plan, * * * the court shall grant the debtor a discharge of all debts provided for by the plan * * * except any debt—
(1) provided for under section 1322(b)(5) of this title; or
(2) of the kind specified in section 523(a)(5) of this title.[8]

11 U.S.C. § 1328(a). Debts under § 523(a)(6) are not included in the list of debts which are nondischargeable under § 1328(a). Based on the express statutory language, we find that debts which fall within the scope of § 523(a)(6) may be discharged pursuant to § 1328(a) if the debtor can meet the requisites of Chapter 13. See *Matter of Swan*, 98 B.R. 502 (Bankr.Neb.1989); *In re Seely*, 6 B.R. 309, 311 (Bankr.E.D.Va.1980); *In re DeSimone*, 25 B.R. 728, 729 (E.D.Pa. 1982); *In re Chase*, 28 B.R. 814, 815 (Bankr.Md.1983), reversed on other grounds, 43 B.R. 739 (D.C.Md.1984) (reversed on Chapter 13 good faith analysis).

11 U.S.C. § 1325(a) sets out six criteria which a debtor must meet before a bankruptcy court will confirm his Chapter 13 plan:

[T]he court shall confirm a plan if—
(1) the plan complies with the provisions of this chapter and with the other applicable provisions of this title;
(2) any fee, charge, or amount required under chapter 123 of title 28, or by the plan, to be paid before confirmation, has been paid;
(3) the plan has been proposed in good faith and not by any means forbidden by law;
(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;
(5) with respect to each allowed secured claim provided for by the plan—
(A) the holder of such claim has accepted the plan;
(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and
(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or
(C) the debtor surrenders the property securing such claim to such holder; and
(6) the debtor will be able to make all payments under the plan and to comply with the plan.

11 U.S.C. § 1325(a). If all six requirements are satisfied, the bankruptcy court must confirm the plan. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 430 (1977), U.S. Code Cong. & Admin.News 1978, p. 5787. Under § 1325(a)(3), the dischargeability of LeMaire's debt to Handeen depends on whether LeMaire proposed the plan in good faith. Handeen argues that a person who files bankruptcy seeking to discharge a debt incurred as the result of criminal conduct can never do so in good faith. Based on the history of the good faith requirement and this circuit's interpretation of § 1325(a)(3), we disagree.

Our objective when interpreting a federal statute is "to ascertain the intent of Congress and to give effect to the legislative will." *In re Hudson*, 859 F.2d 1418 (9th Cir.1988). While the language of a statute is always the starting point when its construction is at issue, *see In re Ron Pair Enterprises*, 828 F.2d 367 (6th Cir.1987), we must also review prior law in order to understand the context in which the provision was drafted and therefore the language itself. *Midlantic National Bank v. New Jersey Department of Environmental Protection*, 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986); *Kelly v. Robinson*, 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986).

■ Because the good faith requirement of § 1325(a)(3) is neither defined in the Bankruptcy Code nor discussed in the legislative history, courts have struggled to set

---

**7.** Section 523(a)(6) expressly prohibits discharge under 11 U.S.C. §§ 727, 1141 or 1328(b).

**8.** Section 1322(b)(5) pertains to curing defaults where the last payment will occur after the date on which the final payment under the plan is due. The other exception, § 523(a)(5), prohibits the discharge of debts based on alimony and child support.

appropriate parameters for the requisite inquiry into the debtor's motives and intentions in proposing a Chapter 13 plan. Most courts of appeals which examined the issue prior to the 1984 amendments held that a bankruptcy court inquiring into a debtor's good faith must examine the totality of the circumstances.[9] *Neufeld v. Freeman,* 794 F.2d 149 (4th Cir.1986); *Flygare v. Boulden,* 709 F.2d 1344 (10th Cir.1983); *In re Kitchens,* 702 F.2d 885 (11th Cir.1983); *In re Estus,* 695 F.2d 311 (8th Cir.1982); *Deans v. O'Donnell,* 692 F.2d 968 (4th Cir. 1982); *In re Rimgale,* 669 F.2d 426 (7th Cir.1982); *In re Goeb,* 675 F.2d 1386 (9th Cir.1982). This court, in *In re Estus,* 695 F.2d at 316, adopted the definition of good faith used in Chapter 11 of the old Bankruptcy Act:

> A comprehensive definition of good faith is not practical. Broadly speaking, the basic inquiry should be whether or not under the circumstances of the case there has been an abuse of the provisions, purpose, or spirit of [the Chapter] in the proposal of the plan * * *.

11 U.S.C. § 766(4) (1976) (repealed).

*Estus* addressed the question of whether § 1325(a)(3) good faith requires a per se minimum level of repayment. The court found that substantial repayment is only one factor in the good faith analysis. See *Deans,* 692 F.2d at 972; *Rimgale,* 669 F.2d at 432; *Goeb,* 675 F.2d at 1390. Other factors for courts to consider in making a determination of good faith include:

> (1) the amount of the proposed payments and the amount of the debtor's surplus;
>
> (2) the debtor's employment history, ability to earn and likelihood of future increases in income;

(3) the probable or expected duration of the plan;

(4) the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court;

(5) the extent of preferential treatment between classes of creditors;

(6) the extent to which secured claims are modified;

(7) the type of debt sought to be discharged and whether any such debt is nondischargeable in Chapter 7;

(8) the existence of special circumstances such as inordinate medical expenses;

(9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act;

(10) the motivation and sincerity of the debtor in seeking Chapter 13 relief; and

(11) the burden which the plan's administration would place upon the trustee.

695 F.2d at 317.

Congress amended § 1325 as part of the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 98 Stat. 333 (1984) (BAFJA). BAFJA added new code § 1325(b),[10] in which Congress limited the factors which may be considered relevant for purposes of establishing good faith under § 1325(a)(3). Section 1325(b) states that if an unsecured creditor objects to confirmation, the bankruptcy court may not approve the plan unless that creditor is to receive full payment, § 1325(b)(1)(A), or, alternatively, the debtor meets the "ability to pay" test; that is, he commits all of his projected income to the plan for at least three years, § 1325(b)(1)(B). This court reevaluated the *Estus* good faith test in light of BAFJA in

---

**9.** The D.C. Circuit was the only court of appeals to depart from the general trend toward analyzing a list of facts as relevant to the totality of the circumstances. *Barnes v. Whelan,* 689 F.2d 193, 200 (D.C.Cir.1982) (defining good faith as "honesty of intention").

**10.** Section 1325(b) provides:

(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—

(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(B) the plan provides that all of the debtor's projected disposable income to be received in

the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

(2) For purposes of this subsection, 'disposable income' means income which is received by the debtor and which is not reasonably necessary to be expended—

(A) for the maintenance or support of the debtor or a dependent of the debtor; and

(B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

11 U.S.C. § 1325(b).

*Education Assistance Corporation v. Zellner,* 827 F.2d 1222 (8th Cir.1987), stating:

> [§ 1325(b)'s] "ability to pay" criteria subsumes most of the *Estus* factors and allows the court to confirm a plan in which the debtor uses all of his disposable income for three years to make payments to his creditors. Thus, our inquiry into whether the plan "constitutes an abuse of the provisions, purpose or spirit of Chapter 13," *Estus,* 695 F.2d at 316, has a more narrow focus. The bankruptcy court must look at factors such as whether the debtor has stated his debts and expenses accurately; whether he has made any fraudulent misrepresentation to mislead the bankruptcy court; or whether he has unfairly manipulated the Bankruptcy Code. See *Estus,* 695 F.2d at 317; *In re Johnson,* 708 F.2d 865, 868 (2d Cir.1983); *Barnes v. Whelan,* 689 F.2d 193, 200 (D.C.Cir.1982); *In re Rimgale,* 669 F.2d 426, 432 (7th Cir.1982); see also 5 Collier on Bankruptcy ¶ 1325.04[2], [3].

827 F.2d at 1227. Although *Zellner* recognizes the impact of § 1325(b) on the determination of good faith, the case preserves the traditional "totality of the circumstances" approach with respect to areas which Congress has not specifically addressed. Such an inquiry is necessary to determine whether a debtor has unfairly manipulated the Bankruptcy Code. See *Matter of Smith,* 848 F.2d 813, 820 n. 8 (7th Cir. 1988).[11] Therefore, even after BAFJA, a bankruptcy court must look at *Estus* factors not addressed by the amendments—including the circumstances under which a debt was incurred and whether a debt would be dischargeable under Chapter 7—to determine whether a debtor proposed his Chapter 13 plan in good faith.

The bankruptcy court's determination of a debtor's good faith for purposes of § 1325(a)(3) is a factual finding which this court reviews under a clearly erroneous standard. *In re Caldwell,* 851 F.2d 852, 858 (6th Cir.1988); *Matter of Metz,* 820 F.2d 1495, 1497 (9th Cir.1987) (collecting cases). The bankruptcy court, having had the benefit of several hearings and testimony from the parties, is uniquely qualified to judge the credibility of the debtor and to ascertain his motivation. We must affirm the bankruptcy court's finding of good faith so long as the court's findings are reasonable in light of the evidence and are supported by law. See *In re Branding Iron Motel,* 798 F.2d 396, 400 (10th Cir. 1986).

We find the bankruptcy court's determination that LeMaire proposed his Chapter 13 plan in good faith is not clearly erroneous. Handeen has suffered serious harm at LeMaire's hand, and we do not take lightly the civil judgment awarded to Handeen to redress his injury. The bankruptcy court recognized the gravity of Handeen's injury and the vicious nature of LeMaire's attack. After properly considering all the factors set forth by this court in *Estus,* however, the bankruptcy court determined that LeMaire's plan was proposed in good faith and was not an abuse of the provisions, purpose or spirit of Chapter 13.

---

11. In *Matter of Smith,* 848 F.2d 813, the Seventh Circuit considered a situation very similar to that in the current case. Smith owned and operated a home repair business in Indiana which fleeced senior citizens by making unnecessary repairs. The state obtained a civil judgment against Smith which required him to pay civil penalties and restitution totalling nearly $50,000. Smith then filed Chapter 13 bankruptcy attempting to discharge the debt incurred as a result of his "willful and malicious" fraudulent conduct. The Seventh Circuit held that the totality of the circumstances test continued to be valid after BAFJA and that whether a debt would be dischargeable under Chapter 7 and the circumstances under which a debt is incurred are factors a court must consider in determining a debtor's good faith. Because the bankruptcy court had not considered these factors, the Seventh Circuit remanded for reconsideration.

We note with interest the suggestion in *Smith* that it might be appropriate to classify a judgment debt arising out of intentionally tortious conduct separately from ordinary consumer debt. *Smith* states:

> "[i]t is reasonable to view a debt incurred as a result of illegal activities as different from a private debt between two persons. The nature of the judgment does not require, but could support, reclassifying the debt owed to the State separate from Smith's other unsecured debt, along with higher payment of the debt owed to the State."

848 F.2d at 822 (citations omitted). The current case differs from *Smith,* however, in that LeMaire owes his debt directly to Handeen, not to the state. Furthermore, the plan does not attempt to classify the debts separately and the parties do not raise the argument on appeal.

As part of its determination, the bankruptcy court considered the principle of fresh start which is the cornerstone of bankruptcy law. The court noted that LeMaire, after serving his sentence, is getting back on his feet both professionally and financially, that the plan proposes to repay a significant portion of the judgment, and that LeMaire and his parents will make substantial sacrifices under the plan. The court also noted that Handeen may modify the plan if LeMaire's financial condition changes substantially. 11 U.S.C. § 1329(a).

We cannot improve on the bankruptcy court's eloquent statement of its resolution of the competing equities:

> I can certainly understand Handeen's feelings; he has been grievously wronged, seriously injured, and now may receive only part of the agreed on compensation for that injury. However, it is the very essence of bankruptcy to provide a debtor with a fresh start. The concept of fresh start is one that is very much overworked, but is one which applies in this case. The debtor pled guilty to the crime that he committed and has paid his debt to society but, unfortunately, has not been able to pay his debt to his victim. It appears that he has made every attempt to reorder his life and obtain the fresh start that bankruptcy promises. Having to live the rest of his life with a significant judgment which would forever accrue interest and result in endless garnishments against his wages and keep him from accumulating any property would be inimical to such a fresh start. I feel that he has made a wholehearted attempt to pay Handeen as much as he is able, which turns out to be a significant amount. Under these circumstances, I find that his motivation is proper and his sincerity real.

*Handeen v. LeMaire*, No. 4–87–164, slip op. at 13 (Bankr.Minn. November 12, 1987).

These findings indicate that the bankruptcy court made its determination on good faith only after careful consideration of the totality of circumstances, and based its decision on LeMaire's motivation and sincerity. While we implore bankruptcy courts to take great care in ascertaining a debtor's good faith where the debts he seeks to discharge were incurred as a result of criminal activity, we are confident that the bankruptcy court reached the correct decision in this case. Therefore, we find that the bankruptcy court's factual findings support its conclusion that LeMaire's proposed plan was not an abuse of the bankruptcy laws.

### III.

11 U.S.C. § 1325(b)(1) provides that if a creditor objects to a plan's confirmation and the plan proposes less than full payment of a creditor's claim, the bankruptcy court may approve the plan only if it includes all of the debtor's projected disposable income for the duration of the plan. Disposable income, for Chapter 13 purposes, means "income * * * which is not reasonably necessary to be expended * * * for the maintenance or support of the debtor." 11 U.S.C. § 1325(b)(2)(A). Handeen argues that the plan proposed by LeMaire does not dedicate all of LeMaire's disposable income to repayment of his debts. Specifically, Handeen attacks as unreasonable LeMaire's payment of rent to his parents, subscriptions to professional journals, and professional books and conferences.

The bankruptcy court took note of Handeen's objections, but found that each of the disputed expenses was reasonable under the circumstances and that "all projected disposable income will be applied to make payments under the plan." We find that the bankruptcy court's findings are supported by the record and therefore not clearly erroneous.

■ LeMaire's original plan listed rent of $400 per month to be paid to his parents. LeMaire testified that his parents reduced the rent to $240 per month to enable him to make more substantial payments on his bankruptcy plan. Handeen objects to LeMaire's rent because LeMaire is living with his parents, to whom he paid no rent prior to January 1987. In essence, Handeen argues that because LeMaire paid no rent to his parents before filing his Chapter 13 case, he should not have to pay any rent for the next five years.

Various portions of testimony support the bankruptcy court's finding that LeMaire's payment of $240 per month to his parents was reasonable. LeMaire explained that he was not required to pay rent while he was in graduate school. His father, Henry LeMaire, testified that he allowed LeMaire to pay his rent by working around the house after finishing graduate school in 1986. Henry LeMaire testi-

fied further, however, that he expected his son to pay rent beginning in January 1987, and that if Gregory LeMaire did not pay the $240 rent he would be asked to leave the house. The bankruptcy court expressly found that there was no collusion in LeMaire's agreeing to pay the rent. "Furthermore, what Handeen asks is not for the debtor to make further financial sacrifices, but that his parents be required to make further financial sacrifices by waiving any rent. I do not think that that is a proper purpose of the bankruptcy code nor a proper inquiry by a court in that context." Bankruptcy Court Order of January 7, 1988, at 2. We agree.

■ We also agree with the findings by the bankruptcy court that the professional expenses were a professional necessity, although not expressly required under the terms of the fellowship.

### IV.

■ Handeen argues that the bankruptcy court erred by approving LeMaire's Chapter 13 plan when LeMaire had no regular income, but rather received a research stipend. A Chapter 13 plan may be approved if the debtor has an income "sufficiently stable and regular to enable such individual to make payments under a plan * * *." 11 U.S.C. § 101(29).

In *Estus*, this court noted that Chapter 13 relief is available to any individual with regular income, whether from wages or other sources. 695 F.2d at 314. The court specifically recognized that "Chapter 13 debtors would include social security recipients, self-employed people, pensioners or professionals." *Id.* at n. 3. We agree with the district court that refusing to consider a regular monthly stipend as income would impose an unduly restrictive interpretation on the term in light of the broad language of the statute and our reading of it in *Estus*. The facts, as found by the bankruptcy court, reveal that LeMaire averaged an annual taxable income of $16,000 from his fellowship during the past two years, that his fellowship would be renewed for a third year, and that he has been offered a post-fellowship research position with a University scientist at a salary of $18,500. The bankruptcy court's conclusion that Le-Maire has a regular monthly income is supported by the record.

### V.

■ Handeen relies on Minn.Stat. § 541.05 to argue that LeMaire's parents' claim based on a loan to their son of $3,600 in legal fees is barred by the six-year statute of limitations. We agree with the bankruptcy court's conclusion that Lemaire waived the statute. See *State v. Hart Motor Express, Inc.*, 270 Minn. 24, 132 N.W.2d 391 (1964) (defense based on statute of limitations may be waived). The record supports the bankruptcy court's conclusion that LeMaire and his parents considered the loans a family obligation to be repaid regardless of the statute. Furthermore, under *Bannitz v. Hardware Mutual Casualty Co.*, 219 Minn. 235, 17 N.W.2d 372 (1945), the statute of limitations had not yet begun to run because the parents never demanded payment. Id. 17 N.W.2d at 373 (where parties agree either expressly or impliedly that a debt is payable on demand, debt does not begin to run until demand for payment is made).

■ Handeen also raises an argument based on the statute of frauds, which bars debts more than one year old on the date of filing unless they are in writing. If applicable, the statute of frauds would preclude nearly the entire claim made by LeMaire's parents. Handeen's argument fails to recognize, however, that the statute of frauds has no application where a verbal contract could be performed within one year even though it runs for an indefinite time. *Eklund v. Vincent Brass and Aluminum Co.*, 351 N.W.2d 371 (Minn.App.1984). LeMaire could have repaid each of his debts to his parents within one year, even though he did not.

■ Finally, we find the bankruptcy court's conclusion that the $8,772 allowed as the amount of LeMaire's parents' claim was a loan, not a gift, to be fully supported by the record.

The decisions of the bankruptcy court and district court are affirmed.

JOHN R. GIBSON, Circuit Judge, dissenting.

I respectfully dissent. While much of the court's discussion reflects the body of law that has developed on the approach to Chapter 13 cases, the court's enthusiasm in avoiding judicial activism causes it to stand justice on its head.

The district court properly observes that in a Chapter 7 proceeding under 11 U.S.C. § 523(a)(6) a judgment resulting from an intentional tort would not be dischargeable. In the judicial gloss that has been imparted to the nondischargeability issue in the Chapter 13 context, and specifically the requirements of 11 U.S.C. § 1325(a), we have looked to the totality of the circumstances. We include in our inquiry the type of debt sought to be discharged, whether any such debt is nondischargeable in Chapter 7, the motivation and sincerity of the debtor and the existence of special circumstances, with illustrative reference to inordinate medical expenses.

In our decisions in *Estus* and *Zellner*, we also indicated that consideration should be given as to whether the debtor has "unfairly manipulated the Bankruptcy Code." See ante at 1379. Under these circumstances, I think the bankruptcy court and district court were clearly erroneous in their determination that the judgment debt for intentionally inflicting a nearly fatal, gunshot wound on the creditor Handeen should be discharged. The court today is swayed by the bankruptcy court's concern with the debtor having to live the rest of his life with a significant judgment that would be inimical to a fresh start. See ante at 1380. This leaves completely out of the equation the fact that the intentionally injured creditor has to live the rest of his life with the injuries inflicted and with the partial amount paid on the judgment as his only balm.

As the Seventh Circuit in *Matter of Smith*, 848 F.2d 813, 821 (7th Cir.1988), observed, the totality of the circumstances test can lead to a conclusion that the bankruptcy court erred in failing to consider the circumstances in which the debt arose and the fact that they were nondischargeable under Chapter 7. The circumstances under which the debt was incurred is a fact that may not be ignored. I have no hesitation in holding that the bankruptcy court and the district court were clearly erroneous in ignoring the circumstances under which the debt was incurred and whether it would be dischargeable under Chapter 7. I would reverse and hold the judgment for the intentionally inflicted injuries nondischargeable.