**George J. BEARD, Jr. a/k/a George Beard and Melanie Walker Beard**

v.

**U.S. TRUSTEE, et al.**

**Civ. A. No. 94–2181.**

United States District Court,
W.D. Louisiana,
Alexandria Division.

Sept. 11, 1995.

William L. Koerber, Vidalia, LA, for appellants.

Paul H. Davidson, Chapter 13 Trustee's Office, Shreveport, LA, Pro Se.

J. Michael Percy, Percy Smith & Foote, Alexandria, LA, for Ouachita Valley Federal Credit Union.

LITTLE, District Judge.

The appellants have specified nine assignments of error in this appeal from the United States Bankruptcy Court for the Western District of Louisiana. These alleged "errors" can be recategorized into three principal issues, two of which are procedural and the

third a substantive matter. A brief review of the procedural history and facts of the case will be helpful.

## PROCEDURAL AND FACTUAL BACKGROUND

Debtors George J. Beard, Jr. and Melanie Walker Beard filed a Chapter 13 petition on 14 June 1994. After schedules and an original plan were filed, the Beards filed an objection to the claim of secured creditor Ouachita Valley Federal Credit Union. The credit union's claim was based on five loans it had made to the Beards that were variously and partially secured by a mobile home, a 1986 Oldsmobile, a 1992 Ford pick up truck, and a boat, motor and trailer. The debtors' objection to Ouachita Valley's claim concerned the amount of the outstanding debt owed to the creditor and the value of the collateral securing that debt. The debtors' objection was noticed for a hearing scheduled on 8 September 1994, which was also the identical date fixed for the confirmation hearing on their proposed Chapter 13 plan.

The Beards' case began to go awry on 1 September 1994, one week before the scheduled confirmation hearing, when Ouachita Valley filed an objection to the debtors' proposed Chapter 13 plan. Ouachita Valley's objection to confirmation, like the debtors' previously filed objection to the creditor's claim, concerned the amount of the outstanding debt and the value of the collateral securing that debt. On the same day it filed its objection to the plan, Ouachita Valley served notice of the objection on the debtors' counsel. On 8 September, the credit union served notice on the Chapter 13 trustee. At no point, however, did the creditor serve the debtors personally. In any event, on 6 September 1994, the debtors' attorney filed an Answer and Opposition to Ouachita Valley's objection to confirmation, containing a request for dismissal based on improper and untimely service.

In bankruptcy court on the morning of 8 September 1994, the debtors objected to a hearing on either their own objection to Ouachita Valley's claim, because the creditor had not filed a written response, or on the credit union's objection to confirmation of the plan, because of improper service. The bankruptcy court, nevertheless, went forward that afternoon with a hearing, ruling first that it would not require a written response from Ouachita Valley to the debtors' objection, and also that Ouachita Valley's failure to serve the debtors individually was inconsequential. Rejecting the debtors' motion for a continuance, the bankruptcy court then consolidated for hearing the debtors' objection to Ouachita Valley's claim, Ouachita Valley's objection to confirmation, and confirmation of the Chapter 13 plan in its entirety. Upon the conclusion of a full evidentiary hearing, the court denied confirmation and sua sponte dismissed the Beards' case as having not been proposed in good faith, as required by 11 U.S.C. § 1325(a)(3).

Thereafter, the debtors filed a motion for a new trial on various grounds. The bankruptcy court denied the motion and this appeal resulted.

## STANDARD OF REVIEW

■ This court has capacity to hear appeals from decisions of a bankruptcy court. See 28 U.S.C. § 158. Our review of a bankruptcy court's decision is governed by the same standards of review employed by the Fifth Circuit when reviewing a district court judgment. A bankruptcy court's conclusions of law are subject to plenary review on appeal and the findings of fact are adopted, unless clearly erroneous. "A finding of fact is clearly erroneous 'when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' ... 'When a finding of fact is premised on an improper legal standard, or a proper one improperly applied, that finding loses the insulation of the clearly erroneous rule.'" *In re Niland,* 825 F.2d 801, 806 (5th Cir.1987) (quoting *Wilson v. Huffman,* 818 F.2d 1135, 1142 (5th Cir.1987)); see also *Roy v. Gravel,* 143 B.R. 825 (W.D.La.1992), *aff'd* 983 F.2d 1062 (5th Cir.1993).

## PROCEDURAL ISSUES

A. *Lack of Written Response to Debtors' Objection to Creditor's Claim*

■ In this appeal, the first issue raised by the debtors is whether the bankruptcy

court was entitled to conduct a hearing on the debtors' objection to Ouachita Valley's claim given that Ouachita Valley had not filed a written response to the debtors' objection. Our staring point is Fed.R.Bankr.P. 9014 which informs us that in a "contested matter ... [n]o response is required under this rule unless the court orders an answer to a motion." Because objections to a claim are generally considered contested matters,[1] the bankruptcy court would appear to have been authorized to proceed with a hearing, even though Ouachita Valley had not filed a written response to the debtors' objection.

The only complicating factor, as the debtors observe, is Local Bankruptcy Court Rule 2.1 E, which provides in part:

> Parties opposing ... contradictory motions pursuant to Bankruptcy Rule 9014 shall file an opposition or objection to same and a request for a hearing thereon, which responses or objections shall be filed at least five (5) calendar days prior to the noticed hearing date.

At first glance the local rule would seem to suggest that Ouachita Valley should have filed a written response to the debtors' objection since their objection to the credit union's claim can surely be characterized as a "contradictory motion pursuant to Bankruptcy Rule 9014." Like Fed.R.Bankr.P. 9014, however, Local Rule 2.1 E also has a discretionary clause which provides:

> The Court in its discretion may hear or may refuse to hear a response not timely filed. The discretionary factors that the Court should consider include: the reason opposition was not timely filed; the need for the Court to consider the defenses alleged in order to determine the appropriate action, and the injury that might result to the untimely filed opponent.

In this instance, the bankruptcy court acted well within the discretion granted to it in Rule 2.1 E in proceeding to a hearing on the debtor's objection even though Ouachita Valley had not filed a timely written response.

First of all, what the the credit union did file—its objection to the Chapter 13 plan— undoubtedly informed the debtors *and* the court of the arguments and evidence it planned to present with respect to the issues raised by the debtors' objection, those being the amount of the outstanding debt and the value of the collateral securing it. In this sense, the credit union's objection probably served as the functional equivalent of a separate written response to the debtors' objection. Even if the credit union's objection did not address the exact same issues raised by the debtor's objection, however, the court simply may not have needed such a response in order to act on the debtors' objection. As it was, both parties were present in court and the credit union had witnesses available ready to testify. Finally, it is hard to imagine that the debtors were injured by the credit union's lack of written response. Indeed, their counsel had already filed his own written response to the creditor's objection to the Chapter 13 plan, evidencing his familiarity with the issues at stake. For these reasons, the court affirms the bankruptcy court's decision to conduct a hearing on the debtor's objection in spite of the credit union's failure to file a written response.

### 2. Failure to Serve Debtors Individually with Creditor's Objection to Confirmation

▮▮▮▮ The second, more difficult, issue raised by the debtors is one of improper service: specifically, whether the bankruptcy court was entitled to conduct a hearing on Ouachita Valley's objection to confirmation of the plan given that the credit union had failed to serve the debtors individually, and the trustee timely,[2] with notice of its objec-

---

1. The Advisory Committee Notes to Rule 9014 specifically list "the filing of an objection to a proof of claim" as a "contested matter." We note, however, that under Bankruptcy Rule 3007 an objection to a claim is considered an "adversary proceeding" if it is "joined with a demand for relief of the kind specified in Rule 7001." In this case, the debtors' objection apparently was not so joined, hence the objection was a contested matter.

2. At the 8 September 1994 hearing, the chapter 13 trustee declined to object to the untimely and improper service upon the trustee. Because the debtors could not conceivably have been prejudiced by this mistake, we focus our attention on the failure to serve the debtors individually.

tion. Here, the starting point for our analysis is Fed.R.Bankr.P. 3015(f) which provides:

> An objection to confirmation of the plan shall be filed and served on the debtor, the trustee, and any other entity designated by the court, and shall be transmitted to the United States Trustee, before confirmation of the plan. An objection to confirmation is governed by Rule 9014.

Fed.R.Bankr.P. 9014, in turn, provides that a motion in a contested manner "shall be served in the manner provided for service of a summons and complaint by Rule 7004." Fed.R.Bankr.P. 7004 provides that proper service may be made by first class mail "upon the debtor ... by mailing copies of the summons and complaint to the debtor at the address shown in the petition ... and, if the debtor is represented by an attorney, to the attorney at the attorney's post-office address." Thus, Rule 3015, incorporating Rules 9014 and 7004, does seem to require service of an objection to confirmation of a plan upon both the debtor's attorney and the debtor individually.

The debtors further support their assignment of error by pointing to Local Bankruptcy Court Rule 6.1., that provides simply:

> Objections to confirmation must be filed in writing and served on the debtor, debtor's attorney and trustee at least five (5) days prior to the confirmation hearing.

In the face of this clear procedural mandate, the credit union's counsel openly admitted his failure to complete proper service, (See *Transcript of Hearing on Motion for a New Trial,* 20 October 1994, at 4.) but argues now in support of the court's decision to conduct the 8 September 1994 hearing on the credit union's objection that his technical failure could not have prejudiced the debtors.

■ Bankruptcy courts that have encountered similar failures to comply with rules on service of process have generally dismissed the complaint of the party who failed to complete proper service, especially in the context of an adversary proceeding. See e.g., *In re Richard R. Thompson,* 4 B.R. 700, 701 (Bankr.E.D.Pa.1980) (holding creditor's failure to serve objection to confirmation of a plan on debtors themselves to be fatal, non-excusable error); *In re DuFour,* 153 B.R.

853, 857 (Bankr.D.Minn.1993) (dismissing complaint in adversary proceeding because of lack of good cause for plaintiff's failure to serve summons & complaint in timely fashion); *In re Bloomingdale,* 137 B.R. 351, 356 (Bankr.C.D.Cal.1991) (finding that unintentional failure to serve debtor's attorney was not "good cause" for failure to comply with Bankruptcy Rule 7004(b)(9)); *In re Sciarretto,* 170 B.R. 33 (Bankr.D.Conn.1994) (finding lack of good cause for improper service).

In a case involving a creditor's attorney's failure to file a proof of claim before a court imposed bar date had passed, the United States Supreme Court adopted a flexible interpretation of Bankruptcy Rule 9006(b)(1) permitting bankruptcy courts to accept *late* filings caused by "excusable neglect," that is, caused by "inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership,* —— U.S. ——, ——, 113 S.Ct. 1489, 1495, 123 L.Ed.2d 74, 85 (1993). Specifically, the Court suggested that in determining whether a particular filing failure is excusable a bankruptcy court may take into account the following factors: (1) the danger of prejudice to the debtor, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was in the reasonable control of the movant, and (4) whether the movant acted in good faith. *Id.* at —— —— ——, 113 S.Ct. at 1498–1499, 123 L.Ed.2d at 89–90. See also *Matter of Christopher,* 35 F.3d 232, 236 (5th Cir.1994) (applying *Pioneer*'s factors to excuse late filing of a notice of appeal from decision of bankruptcy court) and *In re Waggoner,* 157 B.R. 433, 435–36 (Bankr.E.D.Ark.1993), (applying *Pioneer*'s factors to late filing of objection to confirmation of a Chapter 13 plan but finding that "conscious informed incorrect decision" did not constitute excusable neglect).

While the *Pioneer* case arose out of a Chapter 11 petition, rather than a Chapter 13 petition as was the case here, this court notes that the policies ascribed by the Supreme Court to Chapter 11 apply to Chapter 13 in this context as well: namely "reorganization with the aim of rehabilitating the debt-

or and avoiding forfeitures by creditors." *Pioneer*, —— U.S. at ——, 113 S.Ct. at 1495, 123 L.Ed.2d at 85. Similarly, while the *Pioneer* factors relate specifically to late filings rather than incomplete service of process, this court finds that the Supreme Court's recognition that "the bankruptcy courts are necessarily entrusted with broad equitable powers to balance the interests of affected parties, guided by the overriding goal of ensuring the success of the reorganization," *Id.* at ——, 113 S.Ct. at 1496, 123 L.Ed.2d at 86, also applies in this case.

With this teaching in mind, this court finds that the bankruptcy judge correctly exercised its equitable discretion in excusing Ouachita Valley's failure to make service upon the debtors individually as required by Fed. R.Bankr.P. 3015(f) and Local Bankruptcy Court Rule 2.1 E.

As an initial matter, as the credit union has pointed out, there was little danger of prejudice to the debtors due to the incomplete service because the debtors' attorney had timely received the objection to the plan and had even submitted a written response to the court. The debtors' allegation that they were severely prejudiced because their counsel was not prepared for a full evidentiary hearing since he had been expecting the bankruptcy court to dismiss the credit union's objection or possibly grant a continuance is not credible given the debtors' physical presence in court on the day of the consolidated hearing and given that the confirmation hearing itself had been scheduled for that day all along.

Moreover, had the court dismissed the credit union's objection or granted a continuance in order for it to complete proper service, the court could still have conducted a hearing on the debtors' objection to the credit union's claim, as discussed above, or on confirmation of the entire plan itself, thus requiring the debtors to come forward with evidence to support their objection or to support the plan in its entirety. In short, holding the credit union accountable for its counsel's procedural error in this instance would not have had a significant impact on the judicial proceedings except possibly to cause some delay.

Finally, this court finds that the reason for the credit union's failure to serve the debtors individually was merely an honest and good faith oversight and not an intentional effort to deprive the debtors of adequate notice of their objection. Thus, this court affirms the bankruptcy court's decision to conduct a hearing on the credit union's objection and to consolidate that matter with a hearing on the debtors' objection and on confirmation of the plan in its entirety.

## SUBSTANTIVE ISSUE: LACK OF GOOD FAITH

The next major issue on appeal involves two questions: first, whether the bankruptcy court can raise and adjudicate the issue of a debtor's bad faith on its own motion; and second, whether the court's finding of bad faith was itself justified.

▮▮▮▮ As an initial matter, there is no doubt that a bankruptcy court can, sua sponte, raise and reach a determination on the issue of bad faith. The 1986 amendments to 11 U.S.C. 105(a) clearly give the court such power:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

See also *In re Murrell*, 160 B.R. 128, 130 (Bankr.W.D.Mo.1993).

▮▮▮▮ Because the Bankruptcy Code does not define the meaning of "good faith" under 11 U.S.C. 1325(a)(3), bankruptcy courts making a "good faith" determination in a Chapter 13 case must apply a "totality of the circumstances" test on a case by case basis. See *Public Finance Corp. v. Freeman*, 712 F.2d 219, 221 (5th Cir.1983); *Matter of Chaffin*, 816 F.2d 1070, 1073–74 (5th Cir.1987), *modified in* 836 F.2d 215 (1988); *Matter of Love*, 957 F.2d 1350, 1355 (7th Cir.1992). Among the factors that a court

should consider in such a determination are "the amount of the proposed repayments, debtor's earning capacity, types of debt sought to be discharged, frequency with which the debtor has sought bankruptcy relief, and the motivation and sincerity of the debtor." *In re Aichler,* 182 B.R. 19, 21 (Bankr.S.D.Tex.1995). Most fundamentally, a court considering the issue of good faith must determine whether there has been an attempt to abuse the purpose, provisions or spirit of the Bankruptcy Code. *See id.; Matter of Chaffin,* 816 F.2d at 1073.

In this case, the bankruptcy court based its determination that the debtors lacked the requisite good faith in proposing their Chapter 13 plan upon a number of findings gleaned from the consolidated evidentiary hearing held on 8 September 1994. First, the judge found several contradictions in George Beard's testimony concerning the reasons for and the circumstances under which he left a relatively high paying job as a truck driver in Monroe, Louisiana for a lower paying job offshore near Mobile, Alabama. This apparent lack of candor is a factor the court could consider.

More importantly, though, the court was disturbed by several specific allegations of wrongdoing that surfaced in the hearing and which the debtors were unable to rebut fully. First, Beard apparently cashed an insurance proceeds check, generated by damage to a portion of Ouachita Valley's collateral (air conditioner units on the mobile home) that had been made out jointly to Beard and the credit union, without the authority of the credit union. In addition, the debtor apparently pawned other collateral, specifically the boat, motor and trailer, which were subject to the credit union's security interest and then failed to report that transfer and the location of the collateral in their original filings. Furthermore, certain parts of various items of collateral were reportedly lost or damaged just prior to filing or during the pendency of the petition. Finally, the debtors Chapter 13 petition was filed after an executory process suit had been filed by Ouachita Valley and seizure of some of the collateral had already occurred.

Beyond these allegations, the court also found that the debtors had failed to maintain insurance on various items of collateral in direct contravention of their loan obligations to Ouachita Valley and in violation of the court's own chapter 13 policy. Although the debtors supplied the court with what they claimed was a binder for insurance on the mobile home obtained one day prior to the hearing, the court found that what the debtors had obtained was expressly not a binder but merely an application for insurance. Moreover, in this application the debtors also claimed that they had not had previous policies cancelled for non-payment of premiums, although they admitted before the court that their policies had been cancelled numerous times.

While none of these inconsistencies, allegations, or acts of wrongdoing alone would be sufficient to justify a finding of bad faith, their combined presence in this case gave the bankruptcy judge ample reason to find that the debtors' Chapter 13 plan had not been proposed in a manner consistent with the spirit of the bankruptcy code. Under the deferential standard of review mandated for an essentially factual decision such as a good faith determination under § 1325(a)(3), this court must therefore affirm the bankruptcy judge's dismissal of the debtors' plan.

In conclusion, this court AFFIRMS the judgment of the bankruptcy court in all three matters at issue in this appeal: (1) the bankruptcy court's decision to conduct a hearing on the debtor's objection to the creditor's claim in spite of the creditor's failure to file a written response; (2) the court's decision to hear the creditor's objection to confirmation of the debtors' plan even though the creditors had not served that objection on the debtors individually; and (3) the court's dismissal of the debtors' case for lack of good faith under 11 U.S.C. § 1325(a)(3).