**In re Vicki J. MURRELL, Debtor.**

**Bankruptcy No. 93–41877–W–13.**

United States Bankruptcy Court,
W.D. Missouri.

Nov. 3, 1993.

Rick Fink, Chapter 13 Trustee.

Louis S. Wexler, Overland Park, KS, for debtor.

## MEMORANDUM OPINION

FRANK W. KOGER, Chief Judge.

Debtor filed her petition under Chapter 13 on June 23, 1993. Therein she scheduled household goods and furnishings with a market value of $980.00. She scheduled only a rabbit fur with fox collar at a market value of $50.00 under furs and jewelry. She scheduled a 1991 Honda Accord at a value of $13,250.00 and a lien to Commercial National Bank of $14,340.00. Her summary of schedules showed assets of $19,676.00 consisting of her automobile, her ERISA pension and her household goods; secured debts of $14,340.00 (the car); priority debts of $88.00; and unsecured debts of $11,472.72; for a total of $25,900.72.

St. Luke's Hospital Employees Credit Union filed an objection to confirmation. The basis was that debtor's plan proposes to pay unsecured creditors only 52% of their respective claims while 11 U.S.C. § 1325(a)(4) requires that each unsecured creditor (with an allowed claim) must receive a value not less than the liquidation under Chapter 7 would provide. The Credit Union made a loan to debtor on January 12, 1993. In the application for said loan debtor had claimed $30,000.00 of antique furniture and $2,000.00 of jewelry, all of which she claimed to be unencumbered. Unaccustomed to the rapid depreciation of personalty upon entering the bankruptcy arena, the credit union posited that if debtor's antique furniture and

jewelry were liquidated, there would be sufficient funds to pay all claims in full.

Debtor countered with what she labeled a Motion To Determine Status And Amount of Creditor's Claim. In reality it was a request for the valuation of debtor's personalty. In the motion debtor stated:

"The property in question does not secure St. Luke's claim however its value will determine the amount necessary to be paid to unsecured creditors under 11 U.S.C. § 1325(a)(4)."

Debtor called William Fair as a witness. He testified that he was an equipment liquidator, appraiser, auctioneer and had been such since 1971. He testified that he had appraised debtor's household goods and that the liquidation value was $3,140.00. His itemized appraisal and debtor's list of household goods and values did not coincide, even as to the items, but a comparison of the figures is as follows:

| Debtor's Value | Item | Appraised Value |
| --- | --- | --- |
| $ 25.00 | Couch | $ 250.00 |
| 50.00 | Wingback Chair | 100.00 |
| 20.00 | Chair | 40.00 |
| 100.00 | Coffee Table | |
| 75.00 | Walnut Table w/Marble | 150.00 |
| 10.00 | Spool Cabinet | 250.00 |
| 25.00 | Oak Table & 4 Chairs | 1000.00 |
| 50.00 | plus Buffet | for both |
| 15.00 | Wash Stand | |
| 10.00 | Iron Bed | 200.00 |
| 75.00 | Dresser | 150.00 |
| 50.00 | Vanity | 150.00 |
| 100.00 | Sewing Machine | 150.00 |
| 50.00 | TV | —— |
| 50.00 | VCR | 75.00 |
| 125.00 | Stereo | 100.00 |
| 150.00 | Washer/Dryer | —— |
| —— | Antique Mirrors | 50.00 |
| —— | Antique Coffee Grinder | 50.00 |
| —— | Brass Century Clock | 50.00 |
| —— | Powder Dish | 25.00 |
| —— | Chrome Base–Glass Top Table | 25.00 |
| —— | Spice Rack | 10.00 |
| —— | Crock Jugs | 20.00 |
| —— | Carved End Table | 50.00 |
| —— | Microwave | 50.00 |
| | Misc. Dishware | 50.00 |
| $980.00 | | $2,995.00 * |

* This figure varies by $145.00 from the appraiser's testimony and may be explained by his failure to value the washer/dryer.

---

It is rather clear that debtor's January, 1993, valuation of $30,000.00 in antique furniture was not realistic. Debtor explained that she had included her roommate's furniture in the $30,000.00 and he had since moved out. She also claimed that she was using insurance values at that point. As to the valuation in her June, 1993, listing of $980.00, she indicated she thought that was what she could realize from the sale of the property.

There was also a problem with the jewelry debtor had listed for $2,000.00 in January. Her schedules listed transfer of a diamond ring in April of 1993 to "State Line Pawn" for $150.00. Even at the hearing it was represented that she had pawned the ring

and did not know where the pawn ticket was. Minimal investigation by the Trustee revealed several discrepancies. The name of the pawn shop became American Rare Coin and Metals Exchange. Said business buys and sells only and does not pawn. It has no written record of a purchase or sale of a ring from debtor.

Debtor's plan proposes to pay 52% to all unsecured creditors. The claims of unsecured creditors total $11,472.72. Fifty-two percent of $11,472.72 is $5,965.81. Using the $3,140.00 value and adding the $2,000.00 for the ring, adds only to $5,140.00. Debtor is proposing to pay unsecured creditors more than the total value of her assets, much less the value of her assets minus her statutory exemptions of $1,000.00 for household goods and $500.00 for jewelry. It follows then that the credit union's objection on the basis of 11 U.S.C. § 1325(a)(4) must be overruled.

■ There remains one other issue. 11 U.S.C. § 1325(a)(3) requires that a filing be made and a plan be proposed in good faith. No such objection has been raised, but this Court believes that this is an issue which can be raised sua sponte by the Court to prevent injustice or impropriety. Many other courts have concluded the same way. See *In re Huerta*, 137 B.R. 356 (Bankr.C.D.Cal.1992) citing decisions from the 9th, 7th and 5th Circuits as well as the 9th Circuit BAP; *In re Jackson*, 108 B.R. 251 (Bankr.E.D.Cal. 1989) for a clear declaration of the power to so act; and *In re Bodine*, 113 B.R. 134 (Bankr.W.D.N.Y.1990) for a short but clear discussion of good faith.

■ The Court will, therefore, consider whether the plan was filed in good faith. To do so the Court must consider two standards: first, that enunciated by the Eighth Circuit in *In re Estus*, 695 F.2d 311 (8th Cir.1982). *Estus* adopted "a middle road approach" and requires a case by case analysis wherein a court makes a separate, independent determination. As the 8th Circuit said:

> "The bankruptcy court must utilize its fact-finding expertise and judge each case on its own facts after considering all the circumstances of the case. If, after weighing all the facts and circumstances, the plan is determined to constitute an abuse of the provisions, purpose or spirit of Chapter 13, the confirmation must be denied". l.c. 316.

In utilizing that fact finding expertise, the 8th Circuit enumerated eleven factors (as an inclusive but not exclusive list) to be considered. Among those are:

(1) probable or expected duration of the plan;

(2) the accuracy of the plan's statements ... and whether any inaccuracies are an attempt to mislead the court;

(3) the type of debt sought to be discharged and whether any such debt is nondischargeable in chapter 7;

(4) the motivation and sincerity of the debtor in seeking Chapter 13 relief;

In all of the listed factors, the Court believes that debtor fails to exhibit the requisite action or intent. For example, debtor's plan summary suggests that it will take approximately 36 months to pay all secured debt and priority debt and 52% of the unsecured. In other words, debtor is going to pay the minimum of time permitted and it so happens that debtor would have paid in enough then to distribute 52%. If debtor really wished to compose her debts, she could pay 42, 48 or 60 months.

As to the second factor, debtor's schedules are so far off as to become questionable as to any attempt by debtor to present an accurate picture. The following chart illustrates the apparent inaccuracies:

| Amount on Debtor's Schedules | Creditor | Amount of Claim Filed |
|---|---|---|
| $ 2,736.36 | Commerce Bank Card | $ 2,771.20 |
| 416.24 | Dillard Bank | 411.40 |
| 88.00 | Mo. Dept. of Revenue | 221.84 |
| 350.00 | J.C. Penney | 378.00 |
| Not Listed | Citicorp | 254.94 |
| 1,411.26 | Montgomery Ward | 1,436.66 |

| | | |
|---|---|---|
| 4,866.18 | St. Luke's Cr. Union | 5,172.32 |
| 503.64 | Famous Barr | 513.31 |
| 14,340.00 | Comm. Nat. Bank (car) | 13,708.56 |
| 900.00 | Spiegels | 882.91 |

Debtor, at least overestimates her debts almost as much as she underestimates them. The Court also notes that debtor seemingly "forgot" the creditor with the lowest balance (Citicorp), leaving the Court with the distinct impression debtor wanted to retain a credit card account.

As to the third factor, debtor could not avoid the credit union's claim in Chapter 7. It was based on a very questionable financial statement that raised both 11 U.S.C. § 523(a)(2)(A) & (B) questions. That creditor is over ⅛ of debtor's unsecured debt. It is approximately 20% of debtor's total debt and it plus the secured debt and priority debt are some two-thirds of the total debt.

As to the fourth factor, debtor insisted at this hearing that she had pawned her $2,000.00 ring for $150.00. Either she still has the ring, or she sold the ring. Either way, she lied in open court and this negates any possible sincerity in seeking Chapter 13 relief.

There is a second standard that some courts and commentators have espoused, i.e., that the amendment of 1984 to 11 U.S.C. § 1325 now contained in 11 U.S.C. § 1325(b)(1)(B) subsumes all other standards of "good faith" and requires the Court to determine only whether three years of the debtor's disposable income is pledged to debtor's proposals. This Court agrees that the amendment potentially modifies two of the eleven factors set out by *Estus,* and clearly directs that zero per cent plans should be confirmed if all the debtor's disposable income for three years will be applied to fund the plan. However, this Court does not agree that a debtor may file a plan in bad faith and assure confirmation just by pledging all of his disposable income for three years. See *In re LeMaire,* 898 F.2d 1346 (8th Cir.1990). Because the Court believes this case was not filed in good faith, it will not confirm and will, sua sponte, dismiss it.

Accordingly, this case is DISMISSED for lack of good faith in the filing.

The foregoing Memorandum Opinion constitutes Findings of Fact and Conclusions of Law as required under rule 7052, Rules of Bankruptcy.

SO ORDERED.