**In re Harold L. COWAN and Thelma L. Cowan, Debtors.**

**Bankruptcy No. 99–41349–W–13.**

United States Bankruptcy Court,
W.D. Missouri,
Western Division.

July 15, 1999.

Tracy L. Robinson, Kansas City, MO, for Debtors.

## MEMORANDUM OPINION AND ORDER

JERRY W. VENTERS, Bankruptcy Judge.

Harold L. Cowan and Thelma L. Cowan filed a joint petition for relief under Chapter 13 of the Bankruptcy Code on April 8, 1999. This matter comes before the Court at this juncture on the Motion to Dismiss filed by AmeriCredit Financial Services, Inc., on June 4, 1999. The Court heard oral arguments on June 16, 1999, has considered the parties' memorandums, and is now ready to rule. This Court has jurisdiction pursuant to 28 U.S.C. § § 1334(b) and 157(a) and 11 U.S.C. § § 1307 and 1325.

This Memorandum Opinion and Order constitutes the Court's findings of fact and conclusions of law under Bankruptcy Rule 7052.

### FACTUAL BACKGROUND

The present matter involves the second bankruptcy petition recently filed by Howard L. Cowan and Thelma L. Cowan ("the Cowans" or "Debtors") in this Court. The Cowans first filed for protection under Chapter 7 of the Bankruptcy Code on November 17, 1998. That case is still open, although discharge was entered on February 17, 1999, prior to the Debtors' current Chapter 13 filing. Because the crux of AmeriCredit Financial Services, Inc.'s ("AmeriCredit") argument involves the propriety of the Cowans' filing of the Chapter 13 case during the pendency of the Chapter 7 petition, some elaboration of the facts surrounding the first petition in addition to the relevant facts from the present Chapter 13 petition is necessary.[1]

---

1. The factual background of this case presented in this Memorandum Opinion and Order is also discussed in the Memorandum Opinion and Order addressing AmeriCredit's Objection to the Trustee's disposition of the Debtors' automobile, issued simultaneously with this Order. Many of the facts presented in that Order are applicable to the instant proceeding and have been reproduced here as necessary for an understanding of the present matter.

As stated above, the Cowans filed a voluntary Chapter 7 petition on November 17, 1998. AmeriCredit was listed as a secured creditor holding a lien on the Debtors' automobile, a 1999 Dodge Stratus. An Order of Discharge was entered on February 17, 1999. On April 2, 1999, the Trustee filed an Adversary Proceeding in which he sought to avoid AmeriCredit's lien as a preference in violation of 11 U.S.C. § 547, because AmeriCredit had not filed a timely application with the Missouri Department of Revenue to perfect its security interest in the automobile.[2] Initially, AmeriCredit denied that its lien was not properly perfected, but later submitted a Stipulated Order with the Trustee in which AmeriCredit admitted that it had not timely perfected its lien in the vehicle and that the lien could be avoided. The Stipulated Order also provided that AmeriCredit would be allowed a general unsecured nonpriority claim in the Chapter 7 proceeding of $20,354.89.

Also in the Adversary Proceeding the Trustee sought the turnover of the Debtors' automobile and requested that the Debtors' discharge be revoked in the event the Debtors refused to turn over the vehicle to the Trustee.

In an apparent effort to hold on to their new car, the Debtors filed for protection under Chapter 13 on April 8, 1999, and promptly filed a Plan in which they proposed to treat the Chapter 7 Trustee as a secured creditor in the automobile and pay him the value of the car, namely $14,425.00, plus interest, over the duration of the plan (five years).[3] The Trustee would then distribute the payments received to the Chapter 7 unsecured creditors, including AmeriCredit, on a pro-rata basis.

AmeriCredit now seeks dismissal of the Debtors' Chapter 13 petition on the basis that, as a matter of law, a debtor should not be able to maintain two simultaneous petitions in bankruptcy, or on the alternative basis that because this Chapter 13 petition was filed before the Debtors' previous Chapter 7 case was closed, it was filed in bad faith in contravention of 11 U.S.C. § 1325(a)(3).

## DISCUSSION

### 1. Standing

■ As a preliminary matter, the Court addresses the issue of AmeriCredit's standing to pursue the instant motion. Debtors' counsel has suggested that, because AmeriCredit is technically not a creditor in the Chapter 13 proceedings (since the debt owing to it was discharged in the Chapter 7 case), AmeriCredit does not have standing to object to confirmation under 11 U.S.C. § 1325. Technically, he is correct; AmeriCredit is not a member of either of the classes of people who are entitled to object to confirmation under § 1325—AmeriCredit is not a holder of an allowed secured claim, § 1325(a)(5), and it is not a holder of an allowed unsecured claim, § 1325(b)(1). Unfortunately, AmeriCredit's Motion does not provide any help in clarifying its basis for standing.

---

2. The Trustee discovered that the Debtors had purchased the automobile on September 9, 1998, just over two months before they filed their bankruptcy petition and that AmeriCredit's application for a new Certificate of Title for the automobile, which would show AmeriCredit's lien on the face thereof, was not received by the Department of Revenue until November 9, 1998, more than 20 days after the Debtors took possession of the automobile. Consequently, the date of perfection would not relate back to the date of sale but rather fall on November 9, which would place it within the preference period of 11 U.S.C. § 547. *Fidelity Financial Services v. Fink*,

522 U.S. 211, 118 S.Ct. 651, 139 L.Ed.2d 571 (1998).

3. AmeriCredit objected to the Trustee's consent to treatment as a secured creditor in the Debtors' Chapter 13 Plan to receive payments over five years, and asked the Court to compel the Trustee to immediately take possession of and sell the vehicle. The Court denied AmeriCredit's Objection and denied the relief sought by AmeriCredit in a Memorandum Opinion and Order issued simultaneously with this Order.

However, the Court finds that AmeriCredit does have standing to seek the dismissal of the case under 11 U.S.C. § 1307. Section 1307 provides that "on request of a party in interest or the United States Trustee … the court … may dismiss a case under this chapter … for cause." 11 U.S.C. § 1307(c). Although the term "party in interest" appears many times in the Bankruptcy Code, it is not defined in § 101. It has been described as "an expandable concept depending on the particular factual context in which it is applied." *In re River Bend–Oxford Associates,* 114 B.R. 111, 113 (Bankr.D.Md.1990). In various contexts, a "party in interest" has been held to be one who has an actual pecuniary interest in the case, *Kapp v. Naturelle, Inc.,* 611 F.2d 703, 706 (8th Cir.1979); anyone who has a practical stake in the outcome of a case, *In re Amatex Corporation,* 755 F.2d 1034, 1041–44 (3rd Cir.1985); and those who will be impacted in any significant way in the case, *In re Johns–Manville Corp.,* 36 B.R. 743, 754 (Bankr. S.D.N.Y.1984). In the Chapter 11 context, a creditor is included among those listed as parties in interest having a right to appear and be heard. 11 U.S.C. § 1109(b). In this case, AmeriCredit is, at least indirectly, a creditor, inasmuch as it will be entitled to receive a pro-rata share of any funds received by the Chapter 7 Trustee out of the Chapter 13 Plan payments. We believe that AmeriCredit's interest in the manner and extent it receives the payment of its $20,354.89 claim gives it a sufficient stake in the proceeding so as to make it a party in interest, although, as we discuss below, whether or not the case is dismissed would have little impact on the amount of AmeriCredit's ultimate recovery. Additionally, the Court believes that AmeriCredit's participation in the case advances the goals of the Bankruptcy Code, including the equitable distribution of debtors' assets and the clarification of the rights and obligations of debtors and creditors. Therefore, the Court concludes that AmeriCredit does have standing to bring the Motion to Dismiss.

Section 1307 states that a case under Chapter 13 may be dismissed for cause and provides a nonexclusive list of examples. The denial of confirmation is one, 11 U.S.C. § 1307(c)(5), and confirmation may be denied if the plan has not been proposed in good faith, 11 U.S.C. § 1325(a)(3). AmeriCredit argues that the Debtors' Chapter 13 case should be dismissed because, as a matter of law, a debtor cannot have two cases pending simultaneously, or alternatively because filing a Chapter 13 petition before a previously filed Chapter 7 case has been closed constitutes a bad faith filing. The Court will take up these arguments in order.

### 2. *Per se Prohibition Against Simultaneous Petitions*

AmeriCredit first argues that the filing of a Chapter 13 petition before a previously filed Chapter 7 proceeding is closed is *per se* prohibited and constitutes grounds for dismissal. AmeriCredit suggests that this position is supported by a "majority of cases." Upon a careful examination of the cases cited by AmeriCredit and based on the Court's own research, however, the Court is not persuaded that the "majority" position is the better reasoned position, nor is it convinced that it truly represents the attitude of most courts. Rather, it appears that what a number of courts at one point called the "emerging minority," *i.e.,* those who take the view that as long as a discharge has been entered in the Chapter 7 case prior to the filing of the Chapter 13 petition, the concurrent filing should be considered an indicia of a debtor's bad faith rather than absolute ground for dismissal of the second case, has overtaken the majority by a considerable degree. Regardless of the direction of the legal tide, this Court finds the latter position better reasoned and more consistent with Supreme Court precedent.

There is no statutory prohibition against having two bankruptcy cases pending at

the same time. 11 U.S.C. §§ 109(a) and (b), defining who may be a debtor under Chapter 7, and 11 U.S.C. § 109(e), defining who may be a debtor under Chapter 13, do not present any prohibition on simultaneous Title 11 cases, *In re Kosenka,* 104 B.R. 40, 41–42 (Bankr.N.D.Ind.1989); *In re Hodurski,* 156 B.R. 353, 354–55 (Bankr.D.Mass.1993), and the scope of 11 U.S.C. § 109(g), which prohibits serial filings within 180 days after a voluntary dismissal, does not cover the present situation, *In re Cormier,* 147 B.R. 285, 286 (Bankr.D.Maine 1992). In the absence of statutory guidance on this issue, courts have been left to develop their own policy.

The many courts which have addressed the issue of simultaneous filings can be grouped into two general camps–those which find a *per se* prohibition on simultaneous filings,[4] and those which allow the filing of Chapter 13 petitions if the debtors have already received a discharge in their previously filed Chapter 7 case, but consider the second filing a factor in the determination of whether the plan was filed in good faith.[5] There are still other cases that do not fall neatly into either category.[6]

Courts holding that a debtor cannot have two simultaneous bankruptcy cases rely primarily on the Supreme Court's decision in *Freshman v. Atkins,* 269 U.S. 121, 46 S.Ct. 41, 70 L.Ed. 193 (1925). In *Atkins,* the debtor filed a voluntary petition for relief in 1915 and applied for a discharge within the statutory time limit. The Bankruptcy Referee submitted his recommendation to the clerk of the district court recommending that the application be denied, but for some reason, a discharge was never entered and the case was never closed. In 1922, the debtor

---

4. *See In re Keen,* 121 B.R. 513 (Bankr. W.D.Ky.1990); *In re Bodine,* 113 B.R. 134 (Bankr.W.D.N.Y.1990); *In re Jackson,* 108 B.R. 251 (Bankr.E.D.Cal.1989); *In re Fulks,* 93 B.R. 274 (Bankr.M.D.Fla.1988); *In re Smith,* 85 B.R. 872 (Bankr.W.D.Okla.1988).

5. *See In re Saylors,* 869 F.2d 1434 (11th Cir. 1989); *Downey Savings and Loan Association v. Metz (In re Metz),* 820 F.2d 1495 (9th Cir. 1987); *Norwalk Savings Society v. Peia (In re Peia),* 204 B.R. 310 (Bankr.D.Conn.1996); *In re Spectee Group, Inc.,* 185 B.R. 146, 156 (Bankr.S.D.N.Y.1995); *In re Aichler,* 182 B.R. 19 (Bankr.S.D.Tex.1995); *In re Sunderland,* 157 B.R. 39 (Bankr.M.D.Fla.1993); *In re Standfield,* 152 B.R. 528 (Bankr.N.D.Ill.1993); *In re Hodurski,* 156 B.R. 353 (Bankr.D.Mass. 1993); *In re Farrington,* 129 B.R. 271 (Bankr. M.D.Fla.1991); *In re Henke,* 127 B.R. 255 (Bankr.D.Mont.1991); *In re Kosenka,* 104 B.R. 40 (Bankr.N.D.Ind.1989); *Helbock v. Strause (In re Strause),* 97 B.R. 22 (Bankr. S.D.Cal.1989); *In re Ross,* 95 B.R. 509 (Bankr.S.D.Ohio 1988); *Ghosh v. Financial Federal Savings and Loan Assoc. (In re Nimai Kumar Ghosh),* 38 B.R. 600 (Bankr.E.D.N.Y. 1984); *In re Bumpass,* 28 B.R. 597 (Bankr. S.D.N.Y.1983); *In re Robinson,* 18 B.R. 891 (Bankr.D.Conn.1982); *In re Tauscher* 26 B.R. 99 (Bankr.E.D.Wis.1982). *See also, Turner v. Citizens National Bank of Hammond (In re Turner),* 207 B.R. 373 (2nd Cir. BAP 1997); *In re Shockley,* 197 B.R. 677 (Bankr.D.Mont. 1996); *Putnam Trust Company of Greenwich v. Frenz (In re Frenz),* 142 B.R. 611 (Bankr.

D.Conn.1992); *In re Jones,* 117 B.R. 415 (Bankr.N.D.Ind.1990).

6. Cases which do not fall into either camp include those which have allowed the filing of a second petition (Chapter 13) even though a discharge has not officially been entered, *see e.g., Transamerica Credit Corp. v. Bullock (In re Bullock),* 206 B.R. 389 (Bankr.E.D.Va. 1997), and cases which have required more than discharge but less than full closure, *see e.g., In re Delaware Valley Broadcasters Limited Partnership,* 166 B.R. 36, 40 (Bankr.D.Del.1994)(requiring substantial consummation of Chapter 11 plan before case will be considered no longer "pending" for purposes of subsequent filings); *Prudential Insurance Company of America v. Colony Square Co. (In re Prudential Insurance Company of America),* 40 B.R. 603, 607 (Bankr. N.D.Ga.1984)(same). *Compare, Grimes v. United States Farmers Home Administration (In re Grimes),* 117 B.R. 531, 536 (9th Cir. BAP 1990)(holding that discharge in Chapter 11 sufficient); *In re Studio Five Clothing Stores, Inc.,* 192 B.R. 998, 1004 (Bankr. C.D.Cal.1996)(same). The Court notes that even though the courts in *In re Prudential Insurance Company of America* and *In re Delaware Valley Broadcasters Limited Partnership* made substantial consummation of the plan a prerequisite to subsequent filings, they did not require that the first case be closed, a holding that would be consistent with the narrower reading of *Atkins* discussed below.

filed a second voluntary petition which listed debts incurred since the filing of the first petition as well as the debts identified in the first petition. The referee recommended that the discharge be granted, but the district court refused, stating that no discharge could be entered while the first application was still pending. The court of appeals and the Supreme Court affirmed. The Supreme Court stated:

> The refusal to discharge was not on the merits, but on the procedural (sic) ground that the matter could not properly be considered or adjudged, except upon the prior application. This application had been reported upon adversely by the referee, was still pending, and, in ordinary course, could have been considered and acted upon by the court. To ignore it, and make a second application, involving a new hearing, was an imposition upon and an abuse of the process of the court...

*Atkins*, 269 U.S. at 123–24, 46 S.Ct. at 42.

Although the language in *Atkins might* support an across-the-board prohibition against simultaneous filings, the actual holding and circumstances of the case do not. We find a more accurate and succinct statement of *Atkins'* holding in *Transamerica Credit Corporation v. Bullock (In re Bullock)*, 206 B.R. 389, 392–93 (Bankr. E.D.Va.1997):

> It bears repeating that the Court in *Atkins* dismissed neither the debtor's second petition nor his second application for a discharge. In fact, the Court affirmed the district court's decision to discharge all those debts listed in the second application which had been incurred after the debtor had filed his first voluntary petition. In this light, and in the context of the present Code, *Atkins* does not preclude a debtor from maintaining two cases at the same time. At most, Atkins could be interpreted as stating that two cases which seek to

discharge the same debt cannot be pending simultaneously, a principle which this case does not violate.

*In re Bullock,* 206 B.R. at 392–93 (Bankr. E.D.Va.1997). *See Grimes v. United States Farmers Home Administration (In re Grimes)*, 117 B.R. 531, 533–35 (9th Cir. BAP 1990); *In re Hodurski,* 156 B.R. 353, 355 (Bankr.D.Mass.1993).

There are a number of other cases, cited by AmeriCredit as well as various courts, that make apparently unequivocal statements that simultaneous filings are prohibited, but have done so in situations where the debtor had not received a discharge in the first filed case or where there were serious questions concerning the debtor's good faith. *See e.g., In re Wead,* 38 B.R. 658 (Bankr.E.D.Mo.1984); *In re Borg,* 105 B.R. 56 (Bankr.D.Mont.1989); *Appleton v. Belmore (In re Belmore)*, 68 B.R. 889 (Bankr.M .D. Penn.1987); *In re Stahl, Asano, Shigetomi & Associates,* 7 B.R. 181 (Bankr.D.Haw.1980).

Another of these cases—which has been emphasized by AmeriCredit—is *In re Cross Timbers Ranch, Inc.,* 155 B.R. 215 (Bankr.W.D.Mo.1993), decided by the Honorable Frank W. Koger, Chief Judge of the Bankruptcy Court for the Western District of Missouri.[7] In *Cross Timbers,* Judge Koger dismissed a debtor's Chapter 11 petition that was filed on the day of a scheduled foreclosure sale and before the dismissal of the debtor's first Chapter 12 filing had become final. There were also two appeals pending at the time the second petition was filed—one concerning the denial of confirmation of a Chapter 12 Plan and another respecting a determination that the debtor was not eligible for Chapter 12 relief. The second petition was dismissed because the first case was still "pending" in all respects; important issues were up on appeal, and more importantly, the debtor was seeking a discharge of the same debts in the second case as it was in

---

7. Counsel for AmeriCredit had a triumphant gleam in her eye when she called the Court's attention to *Cross Timbers*. The undersigned, when in private practice, successfully represented the creditor in *Cross Timbers*.

the first and no discharge had been granted, a situation clearly proscribed by the holding in *Atkins* and inapposite to the instant case.

In the absence of any statutory prohibition or Supreme Court precedent against simultaneous filings, most courts have taken the approach that a Chapter 13 petition filed before the technical closing of the preceding Chapter 7 case but following an entry of discharge is permissible, but that the second filing and circumstances surrounding it should be considered in the court's evaluation of whether the Chapter 13 plan is filed in good faith.[8]

As stated by the court in *In re Cormier:*

A motion to dismiss for bad faith filing requires consideration of all relevant circumstances. The status of a previous case as technically "open" or "closed" is one factor, but it is not necessarily dispositive.

*In re Cormier,* 147 B.R. at 288.

We believe this is the better reasoned and more logical approach and will follow it. With that in mind, the Court now turns to its analysis of the Debtors' good faith in the filing of their Chapter 13 petition and plan.

### 3. Good Faith Analysis

■■ As mentioned earlier, 11 U.S.C. § 1325(a)(3) provides that a bankruptcy court shall confirm an otherwise appropriate Chapter 13 plan if "the plan has been proposed in good faith and not by any means forbidden by law." The Court has already determined that the Debtors' plan is not "forbidden by law" in that there is no *per se* prohibition on simultaneous filings. While the burden of establishing good faith is on the debtor in confirmation proceedings, with respect to dismissal it is the movant's (here, AmeriCredit's) burden to establish lack of good faith. *In re Dickerson,* 232 B.R. 894, 897 (Bankr.E.D.Tex. 1999).

■■ The test in the Eighth Circuit for whether a Chapter 13 plan has been filed in good faith is an interesting hybrid of two complimentary "components." The first component, set forth in *In re Estus,* 695 F.2d 311 (8th Cir.1982) ("*Estus*"), involves a consideration of the totality of the circumstances surrounding the filing of the plan. As part of the totality of circumstances analysis, the court in *Estus* suggested eleven non-exclusive factors that are "meaningful" to a determination of good faith:

(1) the amount of the proposed payments and the amount of the debtor's surplus;

(2) the debtor's employment history, ability to earn and likelihood of future increases in income;

(3) the probable or expected duration of the plan;

(4) the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court;

(5) the extent of preferential treatment between classes of creditors;

(6) the extent to which secured claims are modified;

(7) the type of debt sought to be discharged and whether any such debt is nondischargeable in Chapter 7;

(8) the existence of special circumstances such as inordinate medical expenses;

(9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act [now the Bankruptcy Code];

(10) the motivation and sincerity of the debtor in seeking Chapter 13 relief; and

(11) the burden which the plan's administration would place upon the trustee.

*Id.* at 317.

Most of these factors are considered to have been subsumed by 11 U.S.C.

8. *See* cases cited *supra* note 5.

§ 1325(b), enacted in 1984,[9] *Noreen v. Slattengren*, 974 F.2d 75, 76 (8th Cir.1992), *Handeen v. LeMaire, (In re LeMaire)*, 883 F.2d 1373, 1378–79 (8th Cir.1989); *Education Assistance Corp., v. Zellner*, 827 F.2d 1222, 1227 (8th Cir.1987)(en banc), and a narrower inquiry, what the Court calls the second "component," was introduced: "The bankruptcy court must look at factors such as whether the debtor has stated his debts and expenses accurately; whether he has made any fraudulent misrepresentation to mislead the bankruptcy court; or whether he has unfairly manipulated the Bankruptcy Code." *Zellner*, 827 F.2d at 1227. The *Estus*, 11 factor / totality of circumstances test was not abandoned, though, and still "remains in place." *Slattengren*, 974 F.2d at 76; *LeMaire*, 883 F.2d at 1379. Thus, the interesting hybrid.

■ In the context of simultaneous bankruptcy filings, a number of other tests have been used to determine good faith. We find a concise summary of these in *In re Cushman*, 217 B.R. 470, 477 (Bankr. E.D.Va.1998):

> In addition to the non-exclusive and representative factors enunciated in *Deans* [10] . . . this court would look to the following factors in a chapter 20 context for determining whether a chapter 13 plan has been proposed in good faith:
>
> 1. The proximity in time of the chapter 13 filing to the chapter 7 filing.
>
> 2. Whether the debtor has incurred some change in circumstance between the filings that suggests a second filing was appropriate and that the debtor will be able to comply with the terms of a chapter 13 plan.

> 3. Whether the two filings accomplish a result that is not permitted in either chapter standing alone.
>
> 4. Whether the two filings treat creditors in a fundamentally fair and equitable manner or whether they are rather an attempt to manipulate the bankruptcy system or are an abuse of the purpose and spirit of the Bankruptcy Code.

*Id.* at 477 (footnotes and citations omitted).

■ Possibly as a corollary to numbers three and four in this list, there is another factor, which was stressed at the June 16 hearing by AmeriCredit and which the Court also finds especially relevant in this case: the functional effect of the two petitions considered together. See *In re Ross*, 95 B.R. 509, 510 (Bankr.S.D.Ohio 1988). See also, *In re Metz*, 820 F.2d 1495, 1497 (9th Cir.1987)("[W]e agree that . . . [the debtor's] . . . successive filings may be examined together and the result achieved by such filings reviewed against the statutory requirements.").

■ Based upon a consideration of the totality of the circumstances, which by implication incorporates all of the above factors, the Court concludes that the Debtors have proposed their Chapter 13 plan in good faith. And although all factors are entitled to equal weight, the Court finds the following factors especially relevant to the present case: the change in circumstances between filings, the functional effect of the two petitions considered together, and the Debtors' dedication of all of their disposable income to the Plan.

a. Change in Circumstances

AmeriCredit has argued that the Debtors did not file in good faith because there

9. Congress amended § 1325 as part of the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 98 Stat. 333 (1984), by adding § 1325(b).

10. The factors listed in *Deans v. O'Donnell*, 692 F.2d 968, 972 (4th Cir.1982), are: the percentage of proposed repayment, the debtor's financial situation, the period of time payment will be made, the debtor's employment history and prospects, the nature and amount of unsecured claims, the debtor's past bankruptcy filings, the debtor's honesty in representing facts, and any unusual or exceptional problems facing the particular debtor. *Id.* at 972.

was no change in circumstances between the filings and points to the "virtually identical" Schedules I (Current Income of Individual Debtors) and J (Current Expenditures of Individual Debtors) filed in the Chapter 7 and Chapter 13 cases as proof of this. Not only does the Court disagree with this characterization of the "circumstances," but points out that the change in circumstances—and there certainly *was* such a change—was the result of AmeriCredit's actions, namely, its failure to perfect its lien in the Debtors' automobile, and was not the result of anything the Debtors did or caused to occur.

The Court sees absolutely no reason to confine its consideration of change in circumstances to income and expenditures. At the time the Debtors obtained a discharge and "concluded" their Chapter 7 for all intents and purposes, they were in possession of their car, in which they believed AmeriCredit had a valid security interest, and they believed that by reaffirming their debt to AmeriCredit they could keep their car. The case remained open only because the Trustee was still investigating/pursuing an avoidance action against AmeriCredit. Ultimately, the Trustee's due diligence paid off and resulted in what would amount to a $ 14,425.00 benefit to the general unsecured creditors of the Chapter 7 case, albeit at AmeriCredit's expense because it had failed to timely perfect its security interest. The Debtors, however, were now facing the loss of their source of transportation—— a significant change in their circumstances.

It is in this context that the Debtors, seeking to keep their car in the face of circumstances *beyond their control,* proposed a plan that would have roughly the same net effect as an immediate sale of the automobile and distribution of proceeds, but would enable them to keep their car. It seems safe to say that the Debtors would not have filed the Chapter 13 if

AmeriCredit had timely perfected its lien in the Debtors' automobile. The Court sees no indication of bad faith in this course of action.

### b. The Functional Effect

AmeriCredit makes much ado about the importance of the functional effect in the determination of good faith and how the functional effect of the two petitions in this case deprives the Chapter 7 general unsecured creditors of something they would have received had the Debtors converted the case to a Chapter 13 rather than filing a new Chapter 13 petition. The Court finds AmeriCredit's argument here more "sour grapes" over having its security interest avoided rather than grounded in reason. A comparison of the possible permutations will illustrate:

If the Debtors had only filed a Chapter 7 petition, the general unsecured creditors would have received a pro-rata portion of the proceeds from the sale of the Debtors' car, which is presumed to be worth $14,425.00, minus the Internal Revenue Service's approximately $5,400.00 unsecured priority claim, and the Debtors would have lost their car. If the Debtors had initially filed under Chapter 13, the payment to the general, unsecured creditors would have been their pro-rata portion of the value of the vehicle, then valued at $16,000, *minus* the Internal Revenue Service's claim, or the Debtors would have had to turn over their car. Finally, if the Debtors had simply converted the case from Chapter 7 to 13, the result would have been largely similar to that of the Chapter 13 filing.

Under the currently proposed "Chapter 20" plan, the general unsecured creditors from the Chapter 7 case will get as much as they would have received under a straight Chapter 7, more than what they would have received in a Chapter 13, about the same as if the Debtors had converted, *and* the Debtors get to keep their car.[11]

---

**11.** Counsel for the Debtors incorrectly emphasizes the interest on the Trustee's secured "claim" that will be passed on to the general

unsecured creditors as a "benefit" of the simultaneous filings. The interest is merely compensatory and does not constitute a net

Therefore, the only "functional effect" that is different under the present circumstances and the currently proposed plan is that the Debtors definitely get to keep their car. The Court does not consider the fact that the Debtors will get to keep their car an indicia of bad faith, but instead a creative, permissible use of the bankruptcy process.

Furthermore, it should be noted that the Supreme Court explicitly authorized the filing of a Chapter 13 petition after a previous Chapter 7 case has been closed in *Johnson v. Home State Bank*, 501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991), and although the Debtors' Chapter 7 case has not technically been closed, under this ruling the Debtors' cumulative use of Chapter 7 and Chapter 13 to obtain a result not possible under one or the other should not be considered repugnant to the law or suggestive of bad faith.

### c. Disposable Income

■ Finally, the Court considers the fact that the Debtors propose to devote all [12] of their disposable income for fifty-five months to the Chapter 13 Plan as a significant indicator of the Debtors' good faith. The court in *In re LeMaire* commented that the requirement in 11 U.S.C. § 1325(b)(1)(B) that a debtor commit all of his or her disposable income to the plan, also referred to as the "ability to pay" test, subsumes most of the *Estus* factors. *In re LeMaire*, 883 F.2d at 1378–79 (citing *Education Assistance Corp. v. Zellner*, 827 F.2d 1222 (8th Cir.1987)). Therefore, even though a 100% commitment of disposable income is not *dispositive* of a debtor's good faith, *In re Murrell*, 160 B.R. 128, 131 (Bankr.W.D.Mo.1993), the Court does find it a significant factor.

increase in the amount received by the general unsecured creditors.

12. For purposes of the good faith determination, the Court will consider the Debtors'

### CONCLUSION

In summary, the Court does not believe that the Debtors' Chapter 13 plan or petition was filed in bad faith, is an attempt to improperly manipulate the bankruptcy system, or is abusive of the purpose and spirit of the Bankruptcy Code. More than anything, the Chapter 13 filing was a direct result of AmeriCredit's failure to timely perfect its security interest in the Debtors' automobile. Sometimes, administrative hurdles, such as a trustee's delay in filing his final report after entry of a discharge or the clerk's delay in finally closing the case file, are beyond the debtor's control. Such delays should not be permitted to defeat the rehabilitative goals of Chapter 13. *Hodurski*, 156 B.R. at 356. At other times, other events that are outside the debtors' control may occur to effect a substantial change in the debtors' circumstances. This case is a prime example of such an event. Under the circumstances, AmeriCredit has no grounds for crying foul.

For the foregoing reasons, the Court concludes that the Debtors, Harold and Thelma Cowan, filed the Chapter 13 Plan in good faith as required by 11 U.S.C. § 1325(a)(3), and it is

**ORDERED** that AmeriCredit's Motion to Dismiss the Debtors' Chapter 13 case be and is hereby DENIED.

**SO ORDERED.**

$1,200 monthly payments all of their disposable income even though counsel candidly points out that they are not paying ".0035434%" of their total income to the plan.