In re Harvey J. **GUIKEMA** and Debra L. Guikema, Debtors.

**Susan L. Rhiel, Chapter 7 Trustee, Plaintiff,**

v.

**Ohio Health Corporation, Defendant.**

**Bankruptcy No. 04–55750.**
**Adversary No. 05–2023.**

United States Bankruptcy Court, S.D. Ohio, Eastern Division at Columbus.

March 19, 2007.

---

Nicholas W. Jones, Delaware, OH, for Debtors.

Bethany Hamilton, Rhiel & Associates Co., LPA, Columbus, OH, for Plaintiff.

Susan L. Rhiel, Columbus, OH, pro se.

James W. Ehrman, Kohrman Jackson & Krantz PLL, Suzana Krstevski Koch, Cleveland, OH, for Defendant.

*OPINION AND ORDER DETERMIN-ING: (1) APPLICABILITY OF PRECLUSION PRINCIPLES; AND (2) STANDING OF VARIABLE AN-NUITY LIFE INSURANCE COM-PANY TO OPPOSE TRUSTEE'S REQUEST FOR TURNOVER*

JOHN E. HOFFMAN, JR., Bankruptcy Judge.

## I. Introduction and Procedural History

Three Chapter 7 panel trustees (collectively, "Plaintiffs") have filed seven separate adversary proceedings ("Adversary Proceedings") seeking turnover of the assets contained in the 403(b) plans of the debtors in the underlying estate cases.[1]

---

1. The debtors in the estate cases are: Tracy R. Hunter (Case No. 03–68413) (Caldwell, J.), Brigitte Strange (Case No. 03–55454) (Preston, J.), Alean Bell (Case No. 04–51179) (Hoffman, J.), Kevin and Rebecca Longnecker (Case No. 04–53276) (Preston, J.), David and Bonnie Herrington (Case No. 04–55753) (Preston, J.), Harvey and Debra Guikema (Case No. 04–55750) (Hoffman, J.), Roger and Pamela Burns (Case No. 05–59738) (Caldwell, J.), James and Joyce Brown (Case No. 05–69492) (Caldwell, J.), and Kenneth and Jacqueline Hawkins (Case No. 05–71605) (Preston, J.) (collectively, "Debtors"). Each of the Debtors' bankruptcy cases was filed before the effective date of the Bankruptcy Abuse

One or more of the Adversary Proceedings has been assigned to each judge sitting in the Columbus division of this Court. Because the Adversary Proceedings involve a common question of law—whether the 403(b) plan assets constitute property of the Debtors' bankruptcy estates—Judges Caldwell, Hoffman and Preston signed and entered an order on March 13, 2006, consolidating the Adversary Proceedings for decision ("Consolidation Order").[2] *See* Adv. Pro. Doc. 28. Of the seven complaints filed by the Plaintiffs, four name Ohio Health Corporation ("OHC") as defendant and three name as defendant the Variable Annuity Life Insurance Corporation ("VALIC").[3] This matter is before the Court following briefing,[4] at the Court's request (Adv. Pro. Doc. 30), on the issues of standing, res judicata and collateral estoppel.[5]

Several of the Plaintiffs initially took the position that OHC and VALIC lacked standing to assert that the property contained in the 403(b) plans does not constitute property of the Debtors' bankruptcy estates and that preclusion principles barred them from raising this argument. *See* Plaintiff, Susan L. Rhiel, Trustee's Motion for Summary Judgment (Adv. Pro. Doc. 20) at 5. But the Court was later apprised—in a telephonic status conference conducted on October 27, 2006, and by way of the Joint Reply submitted by Susan L. Rhiel, Chapter 7 Trustee ("Rhiel") on behalf of all Plaintiffs—that there is no longer any dispute as to OHC's standing to assert that the Debtors' interests in their 403(b) plans do not constitute property of their bankruptcy estates. Rhiel, however, continues to challenge VALIC's standing to litigate this issue. While VALIC's standing remains in dispute, in the Joint Reply Rhiel conceded—on behalf of all Plaintiffs—that OHC and VALIC are not barred by principles of res judicata or collateral estoppel from asserting in the Adversary Proceedings that the 403(b) plan assets are excluded from the

Prevention and Consumer Protection Act of 2005 ("BAPCPA"). Under the BAPCPA amendments to the Bankruptcy Code, 403(b) plan assets are now excluded from a debtor's bankruptcy estate. *See* 11 U.S.C. § 541(a)(7).

2. The Consolidation Order designated *Susan L. Rhiel, Trustee v. Ohio Health Corp.*, Adv. Pro. No. 05–2023 as the lead case for future filings. Accordingly, unless otherwise specified, all references to docket entries (e.g., "Adv. Pro. Doc. ——") will refer to filings listed on the adversary proceeding docket in the lead case.

3. The Court has been informed that two of the three complaints naming VALIC as a defendant—*Ransier v. AIG VALIC (In re Longnecker)*, Adv. Pro. No. 06–2361, and *Rhiel v. VALIC (In re Herrington)*, Adv. Pro. No. 05–2202—have been settled, although no settlement documents have been filed. Further, a review of the docket in the *Herrington* proceeding reflects a dismissal as to Grady Memorial Hospital only. Nevertheless, the only active adversary proceeding in which VALIC is named

as a defendant is *Rhiel v. VALIC (In re Guikema)*, Adv. Pro. No. 05–2203.

4. The parties have filed the following briefs: OHC brief (Adv. Pro. Doc. 34), VALIC brief ("VALIC Br.") (Adv. Pro. Doc. 35), joint reply of all Plaintiffs ("Joint Reply") (Adv. Pro. Doc. 41) and VALIC's response to the Joint Reply ("VALIC Reply"), which was attached to its Motion for Leave to file Reply Brief Instanter (*See* Adv. Pro. Doc. 45, Ex. 1).

5. In the estate cases, the Plaintiffs objected to the Debtors' respective claims that the property held in their 403(b) plans was exempt. In the exemption litigation, the Debtors did not challenge the Plaintiffs' assertion that the assets in their 403(b) plans constituted property of their bankruptcy estates. Because the Debtors conceded that the funds held in their 403(b) plans was property of their respective bankruptcy estates, the Consolidation Order required OHC and VALIC to brief the issue of whether preclusion principles barred them from litigating this issue in the Adversary Proceedings.

Debtors' bankruptcy estates by 11 U.S.C. § 541(c)(2).[6]

## II. Legal Analysis

■ The *Guikema* adversary proceeding was commenced on May 6, 2005, by the filing of a complaint ("Complaint") by Rhiel seeking turnover from VALIC and Grady Memorial Hospital ("Grady") of funds held in Debtor Debra Guikema's 403(b) plan. The Complaint followed this Court's Memorandum Opinion and Order Sustaining Objection to the Claim of Exempt Property, entered April 14, 2005, in the Guikemas' underlying Chapter 7 case, holding that the interest of Mrs. Guikema in her 403(b) plan was not exempt under Ohio Revised Code § 2329.66(A)(10)(b). *See* Case No. 04–55750, Docs. 38 and 39. VALIC was not served with Rhiel's objection to Mrs. Guikema's exemption, nor did VALIC receive notice of or participate in the evidentiary hearing conducted in that matter. VALIC is not challenging the Court's ruling disallowing Mrs. Guikema's exemption, nor could it since the assertion of an exemption is personal to the debtor. *See Taunt v. Gen. Ret. Sys. (In re Wilcox)*, 225 B.R. 151, 155 (Bankr.E.D.Mich.1998), *rev'd on other grounds*, 233 F.3d 899 (6th Cir.2000). VALIC does, however, assert that it is a proper party to contest the turnover of Mrs. Guikema's 403(b) plan assets—on the ground that the assets are excluded from her bankruptcy estate by § 541(c)(2) of the Code.

VALIC filed a timely answer to the Complaint. A motion for default judgment was filed by Rhiel against Grady. In response, Grady filed a motion for leave to file an untimely answer and an objection to the motion for default judgment. In Paragraph 6 of its answer, Grady admitted that it is the administrator of the Grady Memorial Hospital 403(b) Plan. Approximately one month after Grady's belated filing of its answer and its response to the motion for default judgment, Grady withdrew those pleadings and in its Notice of Withdrawal stated: "[T]here is no 'Grady Memorial Hospital 403(b) Plan.' See letter to Plaintiff, attached hereto as Exhibit A." Grady Notice of Withdrawal, Adv. Pro. No. 05–2203, Doc. 23 at 1. Exhibit A to Grady's Notice of Withdrawal is a letter to Rhiel from Grady's counsel stating:

> Please be advised that to the best of our knowledge, there is no "Grady Memorial Hospital 403(b) Plan." Employees of Grady Memorial Hospital may make contributions pursuant to a tax-sheltered annuity contract with The Variable Annuity Life Insurance Company ("VALIC"). However, Grady Memorial Hospital does not have control of any assets in a plan known as the Grady Memorial Hospital 403(b) Plan. Presumably, the

---

**6.** Section 541(c) of the Bankruptcy Code (which was not modified by the amendments to the Code effected by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005) provides:

> (c)(1) Except as provided in paragraph (2) of this subsection, an interest of the debtor in property becomes property of the estate under subsection (a)(1), (a)(2), or (a)(5) of this section notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law—
> (A) that restricts or conditions transfer of such interest by the debtor; or

> (B) that is conditioned on the insolvency or financial condition of the debtor, on the commencement of a case under this title, or on the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement, and that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property.
> (2) A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.
> 11 U.S.C. § 541(c).

funds you seek are in the control of VALIC.

*Id.*, Exhibit A.

Rhiel argues that because Grady acknowledges that there is no "plan" known as the "Grady Memorial Hospital 403(b) Plan," VALIC, unlike OHC, does not have the duties of an ERISA fiduciary, is not itself a plan administrator and, accordingly, has no standing to assert that Mrs. Guikema's interest in her tax-sheltered 403(b) account should be excluded from her estate. Rhiel's argument is set forth in its entirety below:

> VALIC, as a mere provider of investment vehicles and *not* an ERISA fiduciary, lacks standing to challenge whether the Debtor's interest is property of the bankruptcy estate. As noted by Ohio Health in its Brief, standing is a jurisdictional issue. *In re Troutman Enters., Inc.*, 286 F.3d 359 (6th Cir. 2002). VALIC's limited role does not equate with the role of the sponsor of a Plan or the administrator of a plan, each of which owes certain fiduciary duties to the participants. VALIC's duties, instead, are owed to the plans themselves and the sponsors and/or administrators of those plans.

Joint Reply at 9.

Rhiel offers no statutory or case law to support her argument. Nor has the Court found any authority for the proposition that one must be an ERISA fiduciary, plan administrator or plan sponsor in order to have standing to assert that a debtor's interest in a 403(b) account is not property of his/her bankruptcy estate. While Grady may not be the administrator of a retirement plan denominated "Grady Memorial Hospital 403(b) Plan," there is no question that Grady established a tax-deferred annuity arrangement under Internal Revenue Code § 403(b) through which its employees are permitted to make voluntary contributions by way of salary deferrals. *See* VALIC Amended Response to Trustee's Motion for Summary Judgment ("Response"), Adv. Pro. No. 05–2203, Doc. 35, Ex. C, Aff. of Mary C. Birmingham. Nor is there any dispute that the contributions made by Grady employees under this arrangement—including Mrs. Guikema—are invested through annuity contracts issued by VALIC. *Id.* Mrs. Guikema completed an annuity application, was issued an annuity contract by VALIC, and entered into a voluntary salary reduction agreement with Grady in order to contribute to the annuity. *Id.*

VALIC points out that it provides investment vehicles for the "Portfolio Director annuity contract" that it issued to Mrs. Guikema ("Annuity Contract") and also renders non-discretionary administrative services to her employer—Grady. VALIC Br. at 9. VALIC also asserts that it is prohibited from transferring Mrs. Guikema's beneficial interest in the Annuity Contract because of certain transfer restrictions in the contract, and that to turn over the assets in the absence of a "distributable event," as that term is defined in its participants' annuity contracts, would violate the integrity of its contract with thousands of other retirement plan participants and place it at continuing risk of breaching statutorily-mandated restrictions on transfers. *Id.* According to VALIC, an order requiring the turnover of Mrs. Guikema's interest in the plan to Rhiel also would place it in noncompliance with § 403(b) of the Internal Revenue Code.

Rhiel has not disputed any of these contentions. Rather, Rhiel argues that because there is no plan document memorializing Grady's tax-deferred annuity arrangement, then VALIC does not occupy the same position as OHC—an ERISA fiduciary—and thus lacks standing to

challenge her demand for turnover. VALIC counters by asserting that the presence or absence of a plan document should not be determinative of its standing to oppose Rhiel's request for turnover. VALIC also submits that a plan document does in fact exist, noting that "Section 5.1 of the Annuity Contract [explains that] because the [Grady arrangement] is a voluntary employee contribution Section 403(b) retirement plan, the Annuity Contract serves as the Plan Document." Response at 4. This contractual provision states: "Your Purchase Payments are made under a voluntary salary reduction agreement with Your Employer as part of a Tax–Deferred Annuity arrangement under Section 403(b) of the Code, (i) there may not be a separate plan document, in which case the Contract is the Plan...." See Response, Ex. D, Aff. of Michael Baldwin, Ex. 1, Annuity Contract § 5.01 at 17.

■ "A party in interest has standing to challenge whether a debtor's asset is excluded from the estate." In re Benton, 237 B.R. 353, 355 n. 1 (Bankr.E.D.Mich. 1999) (holding that county retirement system had standing to litigate the issue of whether retirement and deferred compensation plan assets were excluded from debtor's bankruptcy estate by operation of 11 U.S.C. § 541(c)(2)). See also S. Cal. Permanente Med. Group v. Ehrenberg (In re Moses), 215 B.R. 27, 34–35 (9th Cir. BAP 1997) (finding that both partnership in which the debtor was a partner, and partnership's retirement committee had standing to appeal bankruptcy court's order sustaining Chapter 7 trustee's objection to debtor's claimed exemption in Keogh plan because appellants "clearly ha[d] an interest in maintaining the tax qualified status of th[e] plan"). "Although the term 'party in interest' appears many times in the Bankruptcy Code, it is not

[statutorily] defined...." In re Cowan, 235 B.R. 912, 915 (Bankr.W.D.Mo.1999).

> [Party in interest] has been described as an expandable concept depending on the particular factual context in which it is applied. In various contexts, a "party in interest" has been held to be one who has an actual pecuniary interest in the case, anyone who has a practical stake in the outcome of a case, and those who will be impacted in any significant way in the case.

Id. at 915 (citations and internal quotation marks omitted). See also Morton v. Morton (In re Morton), 298 B.R. 301, 306–07 (6th Cir. BAP 2003) (applying the Cowan court's definition of party in interest).

VALIC claims that it meets the definition of a party interest and thus has standing to challenge Rhiel's request for turnover of Mrs. Guikema's interest in the Annuity Contract. As the provider of the investment vehicles for the Grady 403(b) arrangement in which Mrs. Guikema participates, VALIC maintains that "[it] has an interest in enforcing the non-transferability provisions of its annuity contracts and in ensuring that it faithfully discharges its contractual obligations to all plan participants." VALIC Br. at 2. VALIC also submits that it "is responsible for maintaining the integrity of the annuity plans and for complying with all IRS regulations with respect to plan distributions." VALIC Reply at 4. According to VALIC, a ruling that Mrs. Guikema's interest in the Annuity Contract is subject to turnover "would cause VALIC to be in noncompliance with Section 403(b) of the Internal Revenue Code" and could "significantly affect VALIC's liabilities and duties with respect to the annuities." Id. And VALIC also points out that Rhiel has failed to offer a shred of authority for the proposition that its standing necessarily turns on

whether it occupies the status of an ERISA fiduciary.

The Court concludes that because the outcome of this case could have a "direct and immediate impact on [VALIC's] obligations and liabilities[,]" *see Benton*, 237 B.R. at 355 n. 1, it is a party in interest with standing to challenge whether the assets held in Mrs. Guikema's annuity account are property of her bankruptcy estate. For the reasons stated by VALIC in its briefing, it is clear that VALIC "has a practical stake in the outcome of [this] case," and "[could] be impacted in [a] significant way" by an adverse ruling in these Adversary Proceedings. *Cowan*, 235 B.R. at 915.

### III. Conclusion

For the foregoing reasons, the Court holds that VALIC has standing to assert that Mrs. Guikema's interest in the Annuity Contract is not property of the estate. And, as noted above, Plaintiffs have now conceded that OHC and VALIC are not barred by preclusion principles from opposing Plaintiffs' demand for turnover of the Debtors' 403(b) plan assets.

**IT IS SO ORDERED.**